# THE OLD TOWN BANK OF BALTIMORE *vs.* J. LAWRENCE McCORMICK ET AL. ·

*Bankruptcy and Insolvency—State Insolvent Law Suspended by National Bankrupt Act Only to Extent of Conflict—Proceeding in Involuntary Insolvency Against Farmers.*

The operation of a State Insolvent Law is suspended by the enactment of a Bankruptcy Law by Congress only in so far as there is a conflict between the two laws ; and the State Insolvent Law remains operative as to cases or classes of persons which are not provided for by the National Bankrupt Law.

When the Federal Bankrupt Law provides that a certain class of persons may apply voluntarily for the benefit of the law, but that such class shall not be adjudged involuntary bankrupts, then Congress has not exercised its power as to this class of persons ; and the involuntary feature of the State Insolvent Law as to them remains in force because not in conflict with the Bankrupt Law.

The Federal Bankrupt Act of 1898, provides that any person who owes debts, except a corporation, shall be entitled to the benefit of the Act as a voluntary bankrupt, and that "any natural person, except a wage earner or a person engaged chiefly in farming or the tillage of the soil * * * may be adjudged an involuntary bankrupt." A creditor of a farmer filed a petition under the State Insolvent Law asking that he be adjudicated an insolvent. *Held,* that since farmers are excepted from the operation of the Federal Law relating to involuntary bankruptcy, the State Insolvent Law on that subject remains in force, and the State Courts have jurisdiction to adjudge a farmer to be insolvent upon application of his creditors.

Appeal from an order of the Circuit Court for Harford County (WATTERS, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Edwin G. Baetjer* (with whom were *N. R. Gill & Sons, Dallam & Rouse, Venable & Howard* on the brief), for the appellant.

Each State has within its territorial limits full plenary and exclusive power over the whole subject of bankruptcy and insolvency. It is not derived from grant of any kind but it is a part of its sovereignty. The whole power of the State over bankruptcy, therefore, still remains, except in so far as the power may have been delegated to the Federal government.

If the grant by the Constitution alone deprived the States of any part of their power, the result would be that the States would have lost the power to legislate upon an important subject and to provide its citizens with necessary remedies, without insuring the necessary legislation by the government to which the power was granted. It was therefore held that adoption of the Constitution alone, or the mere existence of the power of Congress, did not in any way narrow the scope or abridge the extent of the powers of the States. The States had the power to pass the same laws and to include within their operation the same subjects as theretofore. No part of the power of the States was therefore suspended by the mere adoption of the Constitution, or by the mere existence of the powers of Congress. *Sturges* v. *Crowinshield,* 4 Wheaton, 194; *Tua* v. *Carriere,* 117 U. S. 201, at 210.

When, however, Congress does exercise its power and passes Bankrupt Law, then this law, as a law passed in pursuance of powers granted by the Constitution, becomes the supreme law of the land; whatever provisions as to bankruptcy are included within it are paramount and exclude the enforcement and suspend the operation of all State laws inconsistent with it. As it is the exercise, not the grant alone, of the power which suspends the operation of the power and laws of the States, it is the exercise which defines the limits of the exclusive power included in the delegation of power

made to Congress by the Constitution. "It is not the exist-ence, but the exercise of the power which suspends the oper-ation of State laws." *Sturges* v. *Crowninshield,* 4 Wheaton, 194; *Ogden* v. *Saunders,* 12 Wheaton, 213; *Tua* v. *Carriere,* 117 U. S. 210.

The power granted is the power to "establish" uniform Bankrupt Laws. Congress, therefore, has no power to simply annul or suspend State laws; the power can only be exercised by the establishment of National Bankrupt Laws in their stead. It is a power to substitute rather than a power to simply destroy or suspend ; or a power to suspend by con-structive rather than destructive legislation ; a power to ex-clude the State's legislation from the field only by the occu-pation of the same field by congressional legislation.

If it is true that the suspension of the power of the States is caused not by the existence of the congresssional power, but by its exercise, then it follows that the extent of the sus-pension depends upon the extent of the exercise. *Lehigh Coal Co.* v. *Shurgel,* 95 Fed. Rep. 637; *Bradenburg on Bank-ruptcy,* 10; *Black on Bankruptcy,* 271, 272; 1 *Am. Bank,* Rep. 42, note; *Baldwin* v. *Hale,* 1 Wall, 229; *Exparte Eames,* 2 Story, 322; *Herron* v. *Superior Court,* 136 Cal. 279; *Shepard-son's Appeal,* 36 Conn. 23; *Geery's Appeal,* 43 Conn. 289.

The same rule is adopted in *Simpson* v. *Savings Bank,* 56 N. H. 466; *Steelman* v. *Mattix,* 37 N. J. L. 344; *Van Nos-trand* v. *Carr,* 30 Md. 132; *Judd* v. *Ives,* 4 Metc. 402; *Derby* v. *Worcester Co.,* 102 Fed. Rep. 808; *In re Smith,* 92 Fed. Rep. 329; *Bump on Bankruptcy,* (1 ed.), pages 7–8, notes.

We submit, therefore, that both the argument and the au-thorities conclusively establish the following propositions :

That the whole control over the subject of bankruptcy was originally exclusively within the sovereign powers of the States.

That the State is excluded from the exercise of its original power only by the exercise of the power delegated to Con-gress ; and only by the exercise of this power by the estab-lishment of bankrupt laws ; or that the State power is sus-pended the State law excluded only because the National law

is paramount, and the laws cannot conflict; it is the conflict only which excludes the power of the States.

That the State laws and powers are suspended and excluded only to the extent of the exercise of the national power; only to the extent of the conflict, *i. e.*, to the extent to which the two systems include and provide different rules of decision for the same case. To whatever cases the exercise of the power does not extend, whatever cases are excluded from its operation, remain within the power and operation of the State laws. To whatever extent the field is occupied by Congress the State is excluded, but only to the extent of the occupancy. The portions of the field occupied by the two governments are coterminous. The occupancy by Congress effects only a division between the two. The line of division is subject to be shifted and changed by Congress, but it is a line of division only. The aggregate of all cases provided for by both laws can, therefore, never be less than those within the scope of the State law alone. Whatever cases are not within the provisions of congressional legislation necessarily remain within the power and subject to the operation of the State laws. This is especially true of cases specifically excepted from the operation of congressional legislation.

Congress has excepted farmers from the operation of the law, and from its exercise of power. As to this class of cases, therefore, the power of Congress while existing, has not been exercised; and certainly not exercised by the establishment of a law covering it. If this class of cases, therefore, does not remain within the operation of the State law, it is not provided for at all; and it is a portion of the field heretofore occupied by the State, from which the State has been excluded by congressional legislation, but which that legislation has not occupied. This is as we have endeavored to show, can never be the effect of the exercise by Congress of its power over this subject.

It may be suggested that the exception of this class from the operation of the law indicates the intention of Congress to provide that no law, national or state, shall exist upon the

subject.   It might as well, however, be contended that the
failure of Congress to pass a law on any part of the subject
indicated its intention that no law on any part of the subject
should exist.   This is precisely the contention made and pro-
nounced incorrect in *Sturges* v. *Crowninshield, supra.*

The correct rule as shown by the cases above cited is, that
the failure of Congress to legislate upon any part of the sub-
ject, does not show that it is the intention of Congress that
no law should exist, but that the State law upon that subject
shall be undisturbed.

The involuntary feature of a Bankrupt Law is, as above
stated, the most important feature of Bankrupt Laws.   In-
deed it was for a long time contended that the power of Con-
gress was confined to passing involuntary laws, and that the
difference between voluntary, or Insolvent Laws, and invol-
untary, or Bankrupt Laws, was the line of division between the
powers of the State and National government on this subject.
*Sturges* v. *Crowninshield,* 4 Wheaton, 193–4–5; *Collier on
Bankruptcy,* note to sec. 12; 2 *Kent,* 394; *Sacket* v. *Andrews,*
5 Hill (N. Y.) 327.

*S. A. Williams* and *F. R. Williams,* for the appellees.

1. Congress, by the Act of 1898, intended to legislate for
"a person engaged chiefly in farming or the tillage of the soil,"
by including him within the scope of its voluntary provisions,
and by expressly excluding him from its involuntary features.
This intention may be gathered from the Act itself.   And
from a comparison of its provisions with those of the Acts
of 1867, 1841, 1800.

The Act of 1898, in sec. 4, sub-secs. (*a*) and (*b*), in plain
words expressly excluded corporations from the benefits of
its voluntary features, but included certain corporations within
its involuntary features ; it also included wage-earners and
farmers within the voluntary features, but excluded them from
the involuntary features.

That is to say, Congress expressly *assumed jurisdiction* over
wage-earners and farmers in order to apply to them the vol-

untary insolvent laws, and over certain corporations in order to apply to them the involuntary Insolvent Laws, and provided for *each class of debtors*, the distinctive and essential feature of a Bankrupt Law, namely, a discharge. These subsections (*a* and *b*), when read together with the sections specifically setting forth what State laws are to be concurrent with the Act, and also read with section 71, sub-section *b*, which negatives proceedings under State Insolvency Laws after 1st July, 1898, the date of its passage, must be considered as conclusively showing the intent of Congress to assume and exercise, as far as it could, complete power and jurisdiction in bankruptcy over the classes of persons named in the Act, to the exclusion of the power of the States over the same subject.

Therefore, since the object of the Act of 1898 is to establish a *uniform* system, how could Congress have better *established* its uniformity than by :

(1) Enumerating the persons subject to the Act—section 4, (*a* and *b*);

(2) Classifying the persons subject to the Act under the respective features, (voluntary and involuntary), of the system applicable to them ;

(3) Segregating the parts of the system about which State legislation or procedure is not suspended—sections 6 (*a*), 8, 9 (*a*), 64, (*b*) 5, 67 (*e*);

(4) And finally, by *section 71,* (*b*) in effect declaring that the *uniformity* of its system, as established by the Act shall not *be affected* (shall not be conflicted with) by subsequent proceedings commenced under State Insolvency Laws.

Hence, the appellant's contention must resolve itself into this : We will *snbtract* from the Act. *sec. 71,* sub-sec. (*b*), entirely. We will add to the Act a new section, to read as follows : "The States may pass or exercise from and after the passage of this Act, their respective insolvent systems over the corporations, wage-earners and farmers excluded from some of the provisions of this Act."

If such contention be correct, then the preamble of the Act

of 1898 should at the same time be made to read : "An Act to establish by implication only a diversified system of bankruptcy throughout the United States."

It is well to note further that a law may exhibit its scope and purpose by its exceptions, and thereby fix the status of those included within the terms of the exceptions. Here it seems very clear that Congress, by its exceptions, intends a National Bankrupt scheme, which shall include farmers, but shall not subject them to the severity of its involuntary features.

(*b*) The intention of Congress gathered *dehors* the Act of 1898, *i. e.*, by comparison with former Bankrupt Acts. In no previous Act has Congress so specifically declared in what respects the State's insolvent laws or power thereover is *suspended*, and in what respects it may *operate concurrently*, and in no previous Act has Congress expressed *itself so broadly and flatly* against the subsequent operation of State Insolvency Laws as in section 71, sub-section (*b*), Act 1898.

"We are of opinion that the language was chosen to make clear the purpose of Congress that the new system of bankruptcy should supersede all State laws in regard to insolvency, from the date of the passage of the statute." *Parmenter Mfg. Co.* v. *Hamilton*, 172 Mass. 178.

2. The policy of Congress in its several Bankrupt Acts has varied in respect to the definition of Acts of Bankruptcy, the persons included within their scope, the jurisdictional amount of debts owed, the voluntary and involuntary features applicable to such persons, and the procedure by which a discharge was to be obtained and the bankrupt estate distributed.

For instance, as illustrating this policy in applying the voluntary and involuntary features, compare generally the *four Acts—*

|  | 1898. | 1867. | 1841. | 1800. |
|---|---|---|---|---|
|  | Section 11. | Section 1. | Section 1. |  |
| Persons subject to Voluntary features. | All corporations excluded. | Any person (including corporation.) | All persons (including corporations.) | No debtor, (his case expressly left by the act to State Laws.) |

.

| | | Section 39. | Section 1. | Section 1. |
|---|---|---|---|---|
| Persons sub-ject to *Invol-untary* fea-tures. | Some corpor-ations and all Wage-earners and Farmers ex-cluded. Debt $1,000. | Any person falling with-in the ten categories. Debt $250. | Only Mer-chants, Bankers, Factors, Brokers, Underwrit-ers, Marine Insurers. Debt $2,000. | Only Merchants, Banker, Brok-er Factor, Underwriter, Marine Insur-ers, who com-mitted certain specific acts. Debt $1,000. |

Therefore, after examining the previous Bankrupt Acts of Congress and noting their express exclusions in comparison with that of the present law with reference to wage-earners and farmers, and the express prohibition upon State legislative power, set out in section 71, sub-section *b*, the conclusion seems irresistible that Congress deliberately intended that wage-earners and farmers, not only should be excluded from the involuntary features of the Act of 1898, but that State Involuntary Insolvency Laws should not only after the Act 1898, not apply to those two classess of persons—but should not operate at all except in the particulars specified in the Act.

3. Section 71, sub-section *b* of the Act of 1898, though not essential to complete the uniformity of the Bankrupt system, clearly shows an intention to supersede existing systems, and to test by the requirement of this Act all matters relating to bankruptcies.

For suppose that section to be omitted, what will result if the State Insolvency system is not suspended? Since the National Bankrupt Law does not operate to repeal or suspend the common law system of assignments for the benefit of creditors, *having no discharge of the debtor* features (*Mayor v. Hellman*, 91 U. S. 496), there will then be in operation concurrently in each State—*Boese v. King*, 108 U. S. 379; 1. *The United States Bankruptcy Law of 1898;* 2. *The State Insolvent system;* 3. *The Common Law system of assignments.*

The practical result of such a condition of law in Maryland could well be, that a creditor, with a debt of $250, might institute involuntary proceedings in insolvency in the State Court against a wage-earner or farmer, and thereby force such debtor *against his will* to petition in the United States

Courts for the benefit of the voluntary features of Act of 1898, in order to obtain the complete discharge that he could not get under the State Insolvent System, and hence, by the concurrent operation of the State Insolvent Law, and in the teeth of the exceptions contained in the Act of 1898, a *farmer*, although not desiring to take the benefit of the Act of 1898, could be forced by a creditor into voluntary bankruptcy, when that Act expressly excludes him from liability to any of the provisions thereof *against his will.*

Therefore, the State insolvent system would in effect *conflict* with the Act of 1898, and is by reason of such conflict *suspended*, even if sec. 71, sub-sec. (*b*), (which *expressly* and in effect suspends the State system), did not exist.

Hence, the contention of the appellant that the State Insolvent system still operates concurrently with the Act of 1898 must fail; for the State insolvent system is either in force now or is suspended. If section 71 is given the effect which the appellees contend for, then the State system is expressly suspended by the Act of 1898; but, if sec. 71 be not so construed, and the State system is now in force, then the result, as above shown, is a conflict with the Act of 1898, but as soon as the State system conflicts with the Act, the system is *ipso facto* suspended.

FOWLER, J., delivered the opinion of the Court.

This is an appeal from the Circuit Court for Harford County.

On the 22nd of May, 1901, the Old Town Bank of Baltimore filed a petition in insolvency against J. Lawrence McCormick and others under the provisions of Art. 47, secs. 22 and 23 of our Code relating to insolvents as amended by the Act of 1896, ch. 446. The defendants each pleaded to the jurisdiction of the Court. Their pleas are identical. The plea is as follows: "(1.) That this Court has no jurisdiction in these proceedings because the insolvency laws of the State of Maryland have been suspended, superseded or rendered inoperative by the passage of a National Bankrupt Law by the Congress of the United States, and this defendant pleads the said bank-

rupt law in bar of the jurisdiction of this Court in the premises." The plaintiff bank demurred to these pleas, but the learned Judge below overruled the demurrers, and his certificate states the question raised and decided on the demurrers as follows: " That the enactment of the Act of Congress approved July 1st, 1898, entitled 'An Act to establish a uniform system of bankruptcy throughout the United States' and supplements and additions thereto, suspended the operation of Art. 47 of the Code of Public General Laws of Maryland, 1888, entitled 'Insolvents' and all amendments thereof, and especially suspended the operation of sec. 22 (as repealed and amended by the Act of 1896, ch. 446), and sec. 23 thereof, including the operation of said Article on persons 'engaged chiefly in farming and tillage of the soil,' and the class of persons to which the defendant, J. Lawrence McCormick, is alleged in the petition to belong; and that this Court is without jurisdiction to grant any of the relief prayed for in said petition." From the order dismissing its petition the plaintiff has appealed.

The issue thus presented is clear and well defined.

The defendants contend that the enactment of the National Bankrupt Act suspended the operation of the whole insolvent law of this State, while the plaintiff maintains the position that the passage of this national law by Congress suspends the operation of our insolvent law, *only so far as our law conflicts with the national law*, and that, inasmuch as the present bankrupt law (Act of Congress, 1898,) contains no provision for involuntary bankruptcy of persons engaged chiefly in the tillage of· the soil, the provisions of our State Insolvent Law, so far as they apply to that excepted class, remain in full force and effect.

The question presented must depend, in the first place, upon the provisions of the bankrupt law applicable here. Section 4, "Who may become bankrupts" sub-section (a) provides that "Any person who owes debts, except a corporation, shall be entitled to the benefits of this Act *as a voluntary bankrupt.*" And by sub-section (b) it is enacted that "Any natural per-

son, except a wage earner or a person engaged chiefly in farming or the tillage of the soil  *   *   *   *   * may be adjudged an involuntary bankrupt upon default or an impartial trial, and shall be subject to the provisions and entitled to the benefits of this Act"  *   *   *   *   *.

1. From the year 1819 when C. J. MARSHALL delivered the opinion of the Supreme Court of the United States in the leading case of *Sturges* v. *Crowinshield*, reported in 4 Wheaton, 122, it has been held that the provision of the Constitution of United States, Art. 1, sec. 8, (4) providing that Congress shall have power to establish uniform laws on the subject of bankruptcy " does not *in itself* inhibit the States from passing valid insolvent laws. In the case just cited it was said: "It is not the mere *existence* of the power, but its *exercise* which is incompatible with the exercise of the same power by the States." And so also there has been a uniform line of decisions to the effect that so far as Congress has failed to legislate with reference to insolvents, State laws relating to them are operative. Thus in *Sturges* v. *Crowinshield, snpra,* it is said that "if it is not the mere *existence* of the power but its actual *exercise* by the Congress of the United States which prevents the operation of State insolvent laws it is obvious that much inconvenience would result from that construction of the Constitution which should deny to the Legislatures of the States the power of acting on this subject in consequence of *the grant* to Congress." "It may be thought more convenient" continued the Court "that much of it should be regulated by State legislation, and Congress may *purposely omit to provide for many cases* to which its power extends. It does not appear to be a violent construction of the Constitution, and certainly a most convenient one, to consider the power of the State *as existing over such cases as the laws of the land may not reach.*" But in *Ogden* v. *Saunders*, 12 Wheat. 213, the rule is explicitly laid down that "the power of Congress to establish uniform laws on the subject of bankruptcy does not exclude the rights of the States to legislate on the same subject, except when the power has been actually exercised and *the State laws conflict*

*with those of Congress."*     And to the same effect are *Baldwin* v. *Hale*, 1 Wall. 229; *Tua* v. *Carriere*, 117 U. S. 210; *Exparte Eames*, 2 Story, 322.    In the recent case of the *R. H. Herron Co.* v. *Superior Court, &c.*, decided in April of last year by the Supreme Court of California and reported in 68 Pac. Rep. 814, 136 Cal. 279, it was held that "though the Federal Bankrupt Acts suspend operation of any State laws of insolvency, where there is any conflict between the two, the State laws remain in full force in so far as there is no conflict; and as the Bankruptcy Act of 1898 *expressly exempts* all corporations from *voluntary bankruptcy* and only makes subject to involuntary bankruptcy" corporations engaged principally in manufacturing, trading, printing, publishing, or mercantile pursuits" the provisions of the State law applicable to a corporation engaged principally in mining (as was the California corporation) are not suspended.    In the course of its opinion the Court said :    " If the Bankruptcy Act excepts a class of cases from its operation, either in express terms or by necessary implication, it must be considered that it was the intention of Congress not to interfere in that class of cases with the laws of the several States in reference thereto."    A number of cases are cited by JUSTICE HARRISON who delivered the opinion of the Court, and among them is that of *Clarke* v. *Ray*, 1 Har. & J. 318, C. J. CHASE delivering the opinion of the Court. He said: " The Legislatures of the several States have competent authority to pass laws for the relief of all persons who are not comprehended within the Act of Congress."    See also *Van Nostrand* v. *Carr*, 30 Md. 131.    It should be remarked, however, that the situation in the California case just cited somewhat differs from the one here presented.    For there the insolvent proceeded against under the California Insolvent Law was expressly excepted from the provisions relating to the voluntary system, and was not included within, and therefore excepted by implication from the class of corporations made subject to the involuntary system, while here the defendant who is sought to be declared an insolvent under our insolvent law is included under the general terms of the vol-

untary system and expressly excepted from the involuntary system. See also *E. M. Shepardson's Appeal*, 36 Conn. 23; *Geery's Appeal*, 43 Conn. 289; *Steelman* v. *Mattix*, 36 N. J..L. 344; 16 *Am. & Eng. Ency.*, 642 (2nd ed.)

2. This brings us to the real question in the case, namely, is there any conflict between our Insolvent Law and the Federal Bankrupt Law?

We have already transcribed the provisions of section 4 by which it appears that the defendant is expressly excepted from the provision of the Act relating to involuntary bankruptcy, and, therefore, as to this class to which the defendant belongs, *i. e.*, farmers or tillers of the soil, the Federal power has not been exercised. And it, therefore, follows that if this class is not within the State law, there is no existing provision under which those embraced within it can be compelled to distribute their assets fairly and equally among their creditors. In *Geery's Appeal, supra*, it was said: "The benefit of this principle (the equal distribution of a debtor's property without preference) cannot be denied to a creditor without doing him injustice. It is a remedy which he relied on in giving credit and to which he is fairly entitled. If that remedy is not to be found in the Bankrupt Act, it will not be presumed that Congress intended to take away the remedy provided by the State, Congress having limited and restricted the operation of the Bankrupt Act, leaving a number of cases to which it does not apply, it will not be presumed that it was thereby intended to leave creditors in such cases entirely without remedy, as must be the case if the State law is entirely inoperative." But can it be properly or correctly said that any *conflict* can exist between the State and the Federal law so long as the latter by express terms excludes from its operation the subject or class of persons expressly provided for by the State law? The power to enact Insolvent or Bankrupt Laws is vested in the States, and it cannot be extinguished except by the establishment of a Federal system in conflict with the State law. And this Federal system of bankruptcy must be a *genuine* Bankrupt Law (*Sturges* v. *Crowninshield, supra*), or in other words,

as expressed in *Ogden* v. *Saunders, supra,* the power to pass a uniform system of bankruptcy must be *actually* exercised, and the State law must be in conflict with it in order to render the latter inoperative.   The question, therefore, logically arises, does the present Federal Bankrupt Law actually provide for involuntary proceedings against farmers ?   And the answer must be that it does not, but the answer of the defendant goes further and necessarily must do so in order to save his case. He says it is true that while this class is not included, and is expressly excepted, from the involuntary feature of the system, yet it is included in the voluntary feature, and therefore, it is within the *scope* of the national system.   We cannot approve of this method of reasoning not only because it would seem to be a "contradiction in terms to say that cases excepted from the operation of the most important part of the Act are included in its scope," but because it would seem to involve the proposition that the Federal power can render inoperative the State Insolvent Laws applicable to involuntary insolvency without establishing a genuine Bankrupt Law to take the place of the State law.  As we have already seen it has been held from an early day that it is only to the extent that Congress has *actually* legislated upon the subject that the statutes of the several States are suspended by its legislation.   How then can it be said that a failure to legislate, in other words that an express exclusion, raises a conflict ?   But without pursuing this question further it seems to us that the position taken by the defendant must necessarily lead to the conclusion that if the Congress of the United States can by including this class in the voluntary part of the system and excepting it from the involuntary part withdraw. *it* from the operation of our State Insolvent Law it can do the same in regard to any two or more classes, as for instance merchants, traders and corporations, and the result would be that in spite of the failure on the part of Congress to establish a Bankrupt Law, that is to actually exercise the power conferred by the Constitution to pass a genuine Bankrupt Law, State legislation would become inoperative and creditors would be deprived of a rem-

edy to which, as was said in *Geery's Appeal, supra*, they are fairly entitled.

But it was forcibly argued on the part of the defendant that sec. 70, sub-sec. (b) of the Bankrupt Act (1898) shows that it was the intention of Congress to substitute that Act for *every* provision of *every* insolvent law of the several States. It provides as follows : " Proceedings commenced under State insolvent laws *before* the passage of this Act shall not be affected by it." To sustain their view the case of *Parmenter Manufacturing Co.* v. *Hamilton*, 172 Mass. 178, decided in 1898 was relied on. But all this case decides is that the Federal Act deprives the State Court of jurisdiction to entertain jurisdiction in insolvency proceedings filed after 1st July, 1898, when the Federal Act went into force. Or as the Court said : " The Act is to go into full force and effect upon its passage. That is to say the rights of all persons, *in the particulars to which the Act refers*, are to be determined by the Act from the time of its passage." After mentioning a number of the rights which are determined by the Act, the opinion continues : " These various provisions affecting the rights and conduct of debtors and creditors are different from those previously existing in most of the States, and perhaps different from those found in the laws of any State, and they supersede *all conflicting provisions*." In the concluding part of the opinion the distinguised Judge who has recently been appointed Chief Justice of the Supreme Judicial Court of Massachusetts said that the language of sec. 70, sub-sec. (b) "was chosen to make clear the purpose of Congress that the new system of bankruptcy should supersede all State laws in regard to insolvency from the date of the passage of the Act," but necessarily this language means only that all *conflicting* provisions of the State law were thus superseded, for this is the well-settled proposition which he had just announced in a preceding sentence and which we have quoted above. If therefore, we are correct in the conclusion already reached that there is no conflict between the provisions of our insolvent law and the present Bankrupt Law, it follows that the language of sec. 70 relied on

by the defendant can have no influence upon our conclusion in this case.

But, again, it was urged that there is a distinction between this case and cases which arose under laws which did not include *the class* within its scope, as for instance where the Bankrupt Act applied only to debtors whose debts exceeded $300. It was held in *Shepardson's Appeal, supra*, that in cases where the debts were less than $300, the State law was not suspended and debtors of that class could be proceeded against under State laws. But the true rule was laid down by CHIEF JUSTICE MARSHALL in *Sturges* v. *Crowninshield, supra*, that the power of the State continues to exist over such *cases* as the Federal law does not reach. And, therefore, if cases involving involuntary proceedings against a class are not provided for by the Federal law, such cases are within the reach of the State law in spite of the fact that the members of this same class may avail themselves of the voluntary feature, otherwise the rule laid down by CHIEF JUSTICE MARSHALL would have to be changed so as to read that the power of the State exists only over such cases as are against natural persons or corporations not within *any class* provided for by any provision of the Federal law. If this were the rule, then, of course, it would follow as contended that the defendant, being of the class called farmers, and the Bankrupt Act having provided he may avail himself of the voluntary feature, no case *against him* could be reached by the State law. But in our opinion this is not the proper view, for as we have already said it is not within the power of Congress to render inoperative the involuntary feature of State insolvent laws as to any particular class by excepting that class from the involuntary part of the national law. Otherwise the result would be that the State laws as to involuntary insolvency would become inoperative by the mere existence of the power of the United States to establish a system of involuntary bankruptcy. We have seen, however, that it is not the mere *existence*, but the *exercise* of the power to establish a *genuine* bankrupt law in conflict with the State laws, which renders the latter inoperative. *Sturges* v. *Crowninshield, supra.*

In conclusion it may be proper to say that if it is the policy of our State to render farmers and tillers of the soil like other persons subject to the involuntary system of our insolvent laws, as it is declared to be by the provisions of our Code, Art. 47, secs. 22 and 23, we should not by any strained construction of an Act of Congress or by a course of ingenious reasoning attempt to thwart this purpose.

From what we have said it will be seen that we are of opinion that the order appealed from should be reversed.

*Order reversed and new trial awarded.*

(Decided January 21st, 1903.)