## STELLWAGEN v. CLUM.

(Circuit Court of Appeals, Sixth Circuit. November 7, 1914.)

### No. 2448.

BANKRUPTCY (§ 184*)—PROPERTY VESTING IN TRUSTEE—TRANSFERS BY BANK-RUPT.

Bankrupt, a lumber company, transferred certain piles of lumber in its yard to claimant, who was a creditor, by bill of sale. The piles were distinctly marked as sold to claimant. Subsequently, and more than four months prior to the bankruptcy, the lumber was sold by the bankrupt with claimant's consent, and the account against the purchaser therefor was assigned to claimant. At that time, within the rule of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 544 [Comp. St. 1913, § 9585 et seq.]) the company was solvent; but under the rule of decision in Ohio it was insolvent. *Held* that, considering the nature and situation of the property, there was such delivery of possession as to dispense with the necessity of recording the bill of sale as a chattel mortgage under the state statute, and that the trustee in bankruptcy could not, by virtue of anything in the Bankruptcy Act alone, question the validity of either the bill of sale or assignment; that the remaining question—whether the trustee or claimant was entitled to the account or its proceeds depended on whether the Bankruptcy Act suspended Rev. St. Ohio, §§ 6343, 6344, as amended April 30, 1908 (99 Ohio Laws, pp. 241, 242), which provide that any assignment or transfer made by a debtor in contemplation of insolvency, with intent to give a preference, or to hinder, delay, or defraud creditors, provided the assignee or transferee knew of such intent, shall be void at suit of any creditor, and a receiver may be appointed, who

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

shall take charge of and administer all of the property of the debtor—is certified to the Supreme Court.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 275-277; Dec. Dig. § 184.*]

Appeal from the District Court of the United States for the Northern District of Ohio; William L. Day, Judge.

In the matter of the Georgian Bay Company, bankrupt; Alfred Clum, trustee. From an order denying his petition for surrender of an account, A. C. Stellwagen, trustee for Margaret Zengerle, appeals. Questions certified to Supreme Court.

Appellant filed a petition below for an order to compel surrender and transfer to him of certain white pine lumber and a balance due upon a particular open account then in possession of appellee as trustee in bankruptcy for the Georgian Bay Company. The order was denied, the petition dismissed, and appeal taken.

The Georgian Bay Company, an Ohio corporation, was at the time of the transactions in dispute engaged in the wholesale and retail lumber business at Cleveland, Ohio. February 2, 1910, the company delivered to appellant's predecessor (A. L. McBean), as trustee for Margaret Zengerle and the Dime Savings Bank of Detroit, its bill of sale, describing 433,500 feet of white pine lumber then in the company's yards, and stating a total price of $14,013, crediting the trustee with certain promissory notes of the company for a like sum and payable, in different amounts, to the order of Margaret Zengerle, C. M. Zengerle, agent, and the Dime Savings Bank, respectively. Neither the bill of sale nor a copy was filed with the recorder of Cuyahoga county, Ohio: but the lumber so in terms sold consisted of piles (stacked in the ordinary way) which were to be, and at the time in fact were, each distinctly marked: "Sold to A. L. McB., Agt." May 3, 1910, the company, with consent of McBean, sold this lumber and certain of its own lumber then in the yards, to Schuette & Co., of Pittsburgh. Payment was to be made by Schuette & Co., part in cash, part in notes maturing at fixed times between date of sale and the following September 10th, and the balance in cash on or before October 1st. Two days later, May 5th, the Georgian Bay Company transferred to appellant "the balance, 25 per cent. of invoice value or what may show due on the 1st of October, A. D. 1910, of the purchase price of the lumber" (so sold to Schuette & Co.), to secure payment in full of all moneys that should be advanced by, and "payment pro rata of all moneys" then owing to, the Dime Savings Bank, Mrs. Zengerle, and C. M. Zengerle, agent, and any surplus remaining was to be returned to the company. Schuette & Co., while owing a balance of $7,500 on portions of the lumber it had received, rejected the rest. This can be identified, and is worth about $4,000. It was the transfer of this balance and the surrender of this rejected lumber that appellant sought in the court below.

October 31, 1910, the Georgian Bay Company made a general assignment for the benefit of its creditors, which was properly filed the following November 7th; and on the 9th of that month the company was adjudicated a bankrupt. At the time there remained due from the bankrupt to Mrs. Zengerle $7,100. C. M. Zengerle is the husband of Margaret Zengerle, and was the president of the Georgian Bay Company. The notes payable to his wife represented loans of money belonging to her; and in negotiating those loans, and in the transaction had under the bill of sale, he acted as her agent, and as president of the company. The theory of the court below was that the bill of sale (February 2, 1910) was intended merely as security, and, not having been deposited in accordance with section 4150 (2 Bates' Ann. Ohio Stat. p. 2302) concerning chattel mortgages, was null and void; that the transfer (May 5th) of balance accruing October 1st from Schuette & Co. was made with intent to hinder and delay creditors, when, according to the laws and the rule of judicial decision of the state of Ohio, the Georgian Bay Company was insolvent, though not according to the Bankruptcy Act: that Margaret Zengerle was, through her agent, C. M. Zengerle,

chargeable with knowledge of such intent and insolvency, and the Savings-Bank was not; that as to Margaret Zengerle the transfer was null and void, and so was set aside, but that the Savings Bank was entitled to be paid out of the balance of the Schuette account. No appeal was taken from the portion of the decree which allowed recovery by the Savings Bank.

J. Shurly Kennary, of Detroit, Mich., for appellant.

G. B. Marty, of Cleveland, Ohio, for appellee.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

PER CURIAM. The ultimate question arising on the hearing here was whether the Bankruptcy Act operated to suspend certain applicable statutory provisions of Ohio (referred to below). We are disposed to hold that, if such provisions were suspended, appellant is entitled, in behalf of Margaret Zengerle, to recover; otherwise, the trustee in bankruptcy is entitled to hold the balance due from Schuette & Co. and the lumber rejected by them, and administer the same as part of the estate of the bankrupt for the benefit of its general creditors.

The reasons for these conclusions in substance are:

(1) As between Mrs. Zengerle and the general creditors of the Georgian Bay Company, there was sufficient delivery of possession of the lumber covered by the bill of sale to dispense with the necessity of depositing the instrument with the county recorder, such possession having been given as the nature of the property and its situation would permit (Rev. Stat. Ohio, §§ 4150, 4151; Ann. Gen. Code Ohio, §§ 8560, 8561; Hunt v. Bode, Assignee, 66 Ohio St. 255, 269, 64 N. E. 126; Ward v. First Nat. Bank of Ironton, 202 Fed. 609, 613, 120 C. C. A. 655 [C. C. A., 6th Cir.]; In re Cincinnati Iron Store Co., 167 Fed. 486, 491, 93 C. C. A. 122 [C. C. A., 6th Cir.]; Pattison v. Dale, 196 Fed. 5, 12, 13, 115 C. C. A. 639, and citations [C. C. A., 6th Cir.]; Dale v. Pattison, 234 U. S. 399, 409, 410, 411, 34 Sup. Ct. 785, 58 L. Ed. 1370); the sale subsequently made to Schuette & Co. upon the consent of Mrs. Zengerle's trustee was a distinct recognition of the intent and effect of the bill of sale and the marking of the piles of lumber; and the transfer of account made two days later was manifestly designed at once to execute the purpose of the transaction involved under the bill of sale and transpose the rights thereunder of Mrs. Zengerle, as well as of the Savings Bank, to the sales proceeds.

(2) Upon the hypothesis of suspension of the state statutes, since more than four months elapsed between the delivery of the bill of sale, as also of the transfer of account, and the bankruptcy, the trustee cannot, in virtue alone of the Bankruptcy Act, question the validity of either of those instruments. Section 67e of Bankruptcy Act; Mayer v. Hellman, 91 U. S. 496, 501, 23 L. Ed. 377. And see Randolph v. Scruggs, 190 U. S. 533, 537, 23 Sup. Ct. 710, 47 L. Ed. 1165.

(3) However, upon the theory that the pertinent state statutes were not so suspended, the general creditors acquired rights thereunder to have the instruments in dispute set aside, because under the facts shown the company was not then able to meet its debts as they fell

due and so was insolvent within the rule of judicial decision in Ohio (as distinguished from the rule of Bankr. Act, § 1, par. 15) defining insolvency (Mitchell v. Gazzam, 12 Ohio, 315, 336; Benson v. Columbia Ins. Co., 7 Ohio N. P. [N. S.] 113, 131; Cincinnati Equipment Co. v. Degnan, 184 Fed. 834, 840, 107 C. C. A. 158 [C. C. A., 6th Cir.] and citations); and, further, because the instruments were in terms made to a trustee (Brinkerhoff v. Tracy, 55 Ohio St. 558, 571, 45 N. E. 1100; Gashe v. Young, 51, Ohio St. 376, 389, 38 N. E. 20; Dickson v. Rawson, 5 Ohio St. 218, 222; Bagaley & Co. v. Waters, 7 Ohio St. 359, 365; Justice v. Uhl, 10 Ohio St. 170, 175, 176; Conrad & Bro. v. Pancost Co., 11 Ohio St. 685). The rights so vested in the creditors are enforceable at any time within four years (Stivens v. Summers, 68 Ohio St. 421, 441, 442, 67 N. E. 884); and under section 70e of the Bankruptcy Act these rights accrued to the trustee in bankruptcy (In re Mullen [D. C.] 101 Fed. 413, 416, decision by the late Judge Lowell, pointing out the course pursued in the enactment of these sections; In re Schenck [D. C.] 116 Fed. 554, 555, 556; In re Toothaker Bros. [D. C.] 128 Fed. 187, 188; Bush v. Export Storage Co. [C. C.] 136 Fed. 918, 921; Nye, Trustee, v. Hart, 22 Ohio Cir. Ct. R. 427, 431; Hull v. Burr, 153 Fed. 945, 950, 83 C. C. A. 61 [C. C. A., 5th Cir.]; Gregory v. Atkinson [D. C.] 127 Fed. 183, 184; Hurley v. Devlin [D. C.] 149 Fed. 268, 270; Manning v. Evans [D. C.] 156 Fed. 106, 110; In re Scrinopskie, 10 Am. Bankr. Rep. 221, 224; 1 Loveland on Bankruptcy [4th Ed.] § 381, p. 787; Collier on Bankruptcy [8th Ed.] p. 775). Such rights in the trustee cannot in any event be affected, as counsel claim, by the doctrine of York Mfg. Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782. The infirmity pointed out in the bill of sale was from the time of its delivery inherent, and the trustee in bankruptcy, in virtue of the rights of the creditors, was invested with distinct authority to avoid the instrument (Petition of Rouse, 208 Fed. 881, 882, 126 C. C. A. 90; Carey v. Donohue, 209 Fed. 328, 333, 334, 126 C. C. A. 254 [C. C. A., 6th Cir.]).

State Statutes Claimed to be Suspended by the Bankruptcy Act.— The Ohio statutory provisions in force at the date of the bill of sale (February 2, 1910) and in terms vesting rights, if any existed, in the general creditors to have that instrument set aside, were sections 6343 and 6344 of the Revised Statutes, as amended April 30, 1908 (99 Ohio Laws, 241, 242). These sections were each separated and their phraseology was rearranged, though without apparent change in effect, by the General Code of Ohio, approved February 15, 1910 (3 General Code of Ohio, pp. 2392, 2393 and 2982), where they appear as sections 11102, 11103, 11104, 11105, 11106, and 11107 (see, also, 5 Page & Adams, Ann. Ohio Gen. Code, pp. 449, 460, 461, 472); and although the transfer of account was made May 5, 1910, we think it sufficient to set out section 6343 in whole, and section 6344 in material parts (as the sections stood February 2, 1910), in the margin.[1]

---

[1] "Sec. 6343. Every sale, conveyance, transfer, mortgage or assignment, made in trust or otherwise by a debtor or debtors, and every judgment suffered by him or them against himself or themselves in contemplation of

The specific claim is that section 6343, when considered in connection with the chapter concerning insolvent debtors (of which the section forms a part), is suspended by the Bankruptcy Act. We take it that counsel's main reliance, although not distinctly stated, is grounded upon that portion of section 6343 which provides:

"A receiver may be appointed who shall take charge of all the assets of such debtor or debtors, including the property so sold, conveyed, transferred, mortgaged, or assigned, which receiver shall administer all the assets of the debtor or debtors for the equal benefit of the creditors of the debtor or debtors in proportion to the amount of their respective demands, including those which are unmatured."

It is worthy of observation that section 6343 was amended shortly before the passage of the Bankruptcy Act, to wit, April 26, 1898 (93 Ohio Laws, 290). Another amendment was made May 12, 1902 (95 Ohio Laws, 608) but it is not important. By the amendment of 1898 it was provided that a sale, etc., whether made in trust or otherwise, with design to prefer one or more creditors to the exclusion of others or with intent to hinder, delay, or defraud creditors, should be declared void as to creditors at the suit of any creditor, and should—

"operate as an assignment and transfer of all the property and effects of such debtor or debtors, and shall inure to the equal benefit of all creditors of such debtor or debtors in proportion to the amount of their respective demands, including those which are unmatured."

No legislation going this far was ever before enacted in the state. Whether the change made in this provision by the amendment of section 6343 on April 30, 1908, before quoted, was intended as a

insolvency, and with a design to prefer one or more creditors to the exclusion in whole or in part of others, and every sale, conveyance, transfer, mortgage or assignment made, or judgment procured by him or them to be rendered, in any manner, with intent to hinder, delay or defraud creditors, shall be declared void as to creditors of such debtor or debtors at the suit of any creditor or creditors, and in any suit brought by any creditor or creditors of such debtor or debtors for the purpose of declaring such sale void, a receiver may be appointed who shall take charge of all the assets of such debtor or debtors, including the property so sold, conveyed, transferred, mortgaged, or assigned, which receiver shall administer all the assets of the debtor or debtors for the equal benefit of the creditors of the debtor or debtors in proportion to the amount of their respective demands, including those which are unmatured.

"Provided, however, that the provisions of this section shall not apply unless the person, or persons to whom such sale, conveyance, transfer, mortgage or assignment be made, knew of such fraudulent intent on the part of such debtor or debtors, and provided, further, that nothing in this section contained shall vitiate or affect any mortgage made in good faith to secure any debt or liability created simultaneously with such mortgage, if such mortgage be filed for record in the county wherein the property is situated, or as otherwise provided by law, within three (3) days after its execution, and where, upon foreclosure or taking possession of such property, the mortgagee fully accounts for the proceeds of such property.

"Every sale or transfer of any portion of a stock of goods, wares or merchandise otherwise than in the ordinary course of trade in the regular and usual prosecution of the seller's or transferrer's business, or the sale or transfer of an entire stock in bulk shall be presumed to be made with the intent to hinder, delay, or defraud creditors within the meaning of this section, unless the seller or transferrer shall, not less than seven (7) days previous to the transfer of the stock of goods sold or intended to be sold,

modification or not, does not appear; but it is not perceivable that the change so made was substantial. It is further to be observed that section 6344 in terms confines the effect of the conveyance denounced to the particular property sold, etc.; in other words, the duties there imposed upon the receiver or assignee do not extend to the rest of the property of the debtor. This was in harmony with the provisions of both sections 6343 and 6344 as they stood prior to the enactment of April 26, 1898 (2 Rev. Stat. of Ohio [Ed. 1880] pp. 1514, 1515); and this policy is traceable to sections 16 and 17 of the act "regulating the mode of administering assignments in trust for the benefit of creditors," passed April 6, 1859 (56 Ohio Laws, pp. 231, 235; see, also, section 17 as amended February 2, 1863 [60 Ohio Laws, p. 8]); and as early as the act of March 14, 1838, and prior to the enactment of the Ohio Code of Civil Procedure, the same policy prevailed, although the instruments of conveyance were made "subject to the control of chancery" etc. (Swan's Ohio Statutes [Ed. 1841] § 68, p. 717).

It is to be observed of these earlier statutory provisions that they operated to thwart the intent of the grantor in any such conveyance by diverting the property from the trustee he named, and from the creditors he intended *to prefer, to another trustee for the benefit of all his creditors. During this period it was held that the act regulating the mode of administering estates of insolvent debtors, which we have seen included these special provisions as they existed prior to 1898, was not suspended by the Bankruptcy Act of 1867 (Mayer

and the payment of the money thereof, cause to be recorded in the office of the county recorder of the county in which such seller or transferrer conducts his business, and in the office of the county recorder of the county or counties in which such goods are located, a notice of his intention to make such sale or transfer, which notice shall be in writing describing in general terms the property to be sold and all conditions of such sale and the parties thereto; excepting, however, that no such presumption shall arise because of the failure to record notice as above provided in the case of any sale or transfer made under the direction or order of a court of competent jurisdiction, or by an executor, administrator, guardian, receiver, assignee for the benefit of creditors or other officer or person acting in the regular and proper discharge of official duty or in the discharge of any trust imposed upon him by law, nor in the case of any sale or transfer of any property exempt from execution.

"Sec. 6344. Any creditor or creditors, as to whom any of the acts or things prohibited in the preceding section are void, whether the claim of such creditor or creditors has matured or will thereafter mature, may commence an action in a court of competent jurisdiction to have such acts or things declared void. And such court shall appoint a trustee or receiver according to the provisions of this chapter, who upon being duly qualified shall proceed by due course of law to recover possession of all property so sold, conveyed, transferred, mortgaged or assigned, and to administer the same for the equal benefit of all creditors, as in other cases of assignments to trustees for the benefit of creditors. And any assignee as to whom anything or act mentioned in the preceding section shall be void, shall likewise commence a suit in a court of competent jurisdiction to recover possession of all property so sold, conveyed, transferred, mortgaged or assigned, and shall administer the same for the equal benefit of all creditors as in other cases of assignments to trustees for the benefit of creditors." (99 Ohio Laws, 241, 242.)

v. Hellman, 91 U. S. 496, supra, at page 502, 23 L. Ed. 377); Mr. Justice Field saying: "The answer is that that statute of Ohio is not an insolvent law in any proper sense of the term." This court followed that rule after the passage of the present Bankruptcy Act, and of course after the amendment of 1898 to section 6343, though, since only a general assignment was there involved, it would now seem to have been unnecessary to pass upon the effect of section 6343 (In re Farrell, 176 Fed. 505, 509, 100 C. C. A. 63); and it will be remembered that it is not sought in the instant case to recover any property of the debtor except only the lumber (or its equivalent) specifically described in the bill of sale and transfer of account.

The questions, then, of ultimate control, would seem to be whether the change in statutory policy so pointed out offends against the Bankruptcy Act, especially sections 60 and 67; and, if so, whether the whole of section 6343 is suspended, or only the portion which in effect appropriates, for the benefit of all the creditors, the property of the debtor not expressly embraced in the preferential or fraudulent deed.

One view is that the Bankruptcy Act covers such a situation and so occupies the field, that it is paramount and exclusive, and that necessary conflict follows (counsel's reliance being placed upon Butler v. Goreley, 146 U. S. 303, 13 Sup. Ct. 84, 36 L. Ed. 981; Tua v. Carriere, 117 U. S. 201, 6 Sup. Ct. 565, 29 L. Ed. 855; Ogden v. Saunders, 12 Wheat. 213, 6 L. Ed. 606; Baldwin v. Hale, 1 Wall. 223, 17 L. Ed. 531; 5 Cyc. 240). These citations suggest, also, In re Edward Klein, 1 How. 277, note, 280, Fed. Cas. No. 7,865, and Globe Ins. Co. v. Cleveland Ins. Co., Fed. Cas. No. 5,486; Nor. Pac. Ry. v. Washington, 222 U. S. 370, 378, 32 Sup. Ct. 160, 56 L. Ed. 237.

The opposing view in substance is that actual conflict must be shown before suspension can be said to prevail, and that the state law, in the present instance at least, operates in aid of the bankruptcy law and so is not in conflict with it (counsel relying on Miller v. New Orleans Acid Co., 211 U. S. 496, 505, 506, 29 Sup. Ct. 176, 53 L. Ed. 300). This is suggestive of the related rule laid down in the Minnesota Rate Cases, 230 U. S. 352, 398, 402, 33 Sup. Ct. 729, 57 L. Ed. 1511 et seq., and the kindred decisions following that rule; also In re Watts & Sachs, 190 U. S. 1, 31, 32, 23 Sup. Ct. 718, 47 L. Ed. 933; Randolph v. Scruggs, supra, 190 U. S. at p. 533, 23 Sup. Ct. 710, 47 L. Ed. 1165; Missouri, Kansas & Texas R. Co. v. Harris, 234 U. S. 412, 417, 418, 34 Sup. Ct. 790, 58 L. Ed. 1377; Old Town Bank v. McCormick, 96 Md. 341, 53 Atl. 934, 60 L. R. A. 577, 94 Am. St. Rep. 577; and Herron Co. v. Superior Court, 136 Cal. 279, 68 Pac. 814, 89 Am. St. Rep. 124.

Finding ourselves unable to reach a satisfactory conclusion upon the question of suspension, it is ordered that the following questions of law be certified to the Supreme Court for its instructions thereon:

(a) Whether the Bankruptcy Act of the United States, in force on the dates herein mentioned, operated to suspend section 6343 of the Revised Statutes of Ohio, as such section stood February 2, 1910.

(b) Whether the Bankruptcy Act operated to suspend the sections

into which section .6343 was divided and numbered, February 15, 1910, by the General Code of Ohio, to wit, sections 11102, 11103, 11104, and 11105, as such sections existed May 5, 1910.

(c) If the Bankruptcy Act did not operate to suspend in their entirety the several sections of the Ohio statutes mentioned in the preceding questions, whether such suspension extended only to the portions thereof which in terms appropriated, for the benefit of all the creditors, the property of the debtor not specifically described in the bill of sale and transfer of account in dispute.

A further order will be entered suspending ultimate decision of the cause until answers to such questions are received.