[S. F. No. 2915. In Bank.—April 12, 1902.]

R. H. HERRON COMPANY, Petitioner, v. SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, and J. M. TROUTT, Judge thereof, Respondents.

BANKRUPTCY ACT—SUSPENSION OF STATE INSOLVENT LAW—EXCEPTIONS. —The act of Congress upon the subject of bankruptcy is the supreme law of the land upon that subject, so far as included therein, and suspends and supersedes any state law of insolvency within the scope of the Federal law and so far as conflicting therewith; but the Bankruptcy Act does not supersede the operation of the state insolvent law upon any subject-matter which is expressly or impliedly excepted from the operation of the Bankruptcy Act.

ID.—EXCEPTION OF MINING CORPORATIONS.—The Bankruptcy Act of 1898 is not operative upon all classes of creditors or upon all classes of corporations, and does not apply to mining corporations organized under the laws of this state for the exclusive purpose of engaging in the business of mining therein; and the provisions of the insolvency law of this state, so far as applicable to such mining corporations, are not superseded or affected by the Federal law.

ID.—PROHIBITION—DEFECTIVE PETITION.—A petition for a writ of prohibition to the superior court to restrain a proceeding in insolvency against a corporation which does not set forth the class of corporations to which the insolvent corporation belongs, or the nature of the business in which it is engaged, is defective in not showing that such a corporation is within the scope of the Bankruptcy Act.

ID.—APPLICATION UPON PLEADINGS—ANSWER—MINING CORPORATION.— Where the application for a peremptory writ of prohibition was made upon the pleadings, and the answer shows that the insolvent corporation proceeded against in the superior court is a mining corporation, exclusively engaged in the business of mining in this state, and has never been engaged in manufacturing, or trading, or printing, or publishing, or any mercantile pursuits, within the provisions of the Bankruptcy Act, it appears that the action of the superior court was within its jurisdiction, and the writ must be denied.

APPLICATION for writ of prohibition to the Superior Court of the City and County of San Francisco. J. M. Troutt, Judge.

The facts are stated in the opinion of the court.

Reardan & Whitaker, for Petitioner.

P. L. Benjamin, for Respondents.

HARRISON, J.—The petitioner herein recovered judgment in the superior court in and for San Francisco, August 31, 1901, against the Grant Oil Company, a corporation, for the sum of $1,510, upon which an execution was issued to the sheriff of San Benito County, and that officer levied upon certain property of the judgment debtor, and advertised the same to be sold September 13th. August 17, 1901, certain creditors of the Grant Oil Company filed a petition in the superior court for San Francisco, in accordance with the provisions of the Insolvent Act of 1895, praying that the said Grant Oil Company be adjudged an insolvent debtor, and thereafter such proceedings were had in the matter that on September 6th the superior court made and entered its order adjudging the corporation an insolvent debtor, and appointing September 16th as the day for the creditors to prove their debts against said debtor and choose an assignee for it. A copy of this order was served upon the sheriff of

San Benito County, and by reason thereof he refused to sell the property of the debtor, levied upon by him as aforesaid. The petitioner asks for a writ of prohibition to prevent the superior court from proceeding with the election of an assignee for said insolvent debtor, or otherwise assuming jurisdiction in the matter of said insolvency, upon the ground that by virtue of the act of Congress passed in 1898 establishing a uniform system of bankruptcy throughout the United States, the Insolvent Act of this state was suspended, and the courts of this state have no jurisdiction to entertain the proceedings in insolvency provided for in said Insolvent Act.

The provision in the constitution of the United States conferring upon Congress the power ''to establish uniform laws on the subject of bankruptcies throughout the United States,'' of necessity makes any act of Congress passed upon that subject the supreme law of the land, and it was at a very early day determined that the effect of such action of Congress is to suspend and supersede the operation of any state law of insolvency whenever there is any conflict between the two. There can be no concurrent jurisdiction in the two sovereignties over the same subject, and, as the people of the several states have yielded to the United States the power to enact laws upon this subject, it follows that when the United States has enacted a law, the power of the state to enforce its own law upon that subject, whether it be similar or different, must yield to what is the supreme law of the land. It has, however, been held in various decisions, beginning with *Sturges* v. *Crowninshield,* 4 Wheat. 122, and from that time down to the present, that it is only to the extent that Congress has legislated upon the subject that the statutes of the several states are suspended by its legislation. In *Sturges* v. *Crowninshield,* it was said by Chief Justice Marshall, in reference to the power given to Congress: ''This establishment of uniformity is perhaps incompatible with state legislation on that part of the subject to which the acts of Congress may extend. . . . It does not appear to be a violent construction of the constitution, and is certainly a convenient one, to consider the power of the states, as existing over such cases as the laws of the Union may not reach; but, be this as it may, the power granted to Congress may be exercised or declined, as the wisdom of that body shall decide. If in the opinion of Congress uniform laws concerning bankruptcies

ought not to be established, it does not follow that partial laws may not exist, or that state legislation on the subject must cease. It is not the mere existence of the power, but its exercise, which is incompatible with the exercise of the same power by the states.'' It is not the right to establish these uniform laws, but their actual establishment, which is inconsistent with the partial acts of the states. If the Bankruptcy Act excepts a class of cases from its operation, either in express terms or by necessary implication, it must be considered that it was the intention of Congress not to interfere in that class of cases with the laws of the several states in reference thereto. The state laws will remain operative in all cases which are not within the provisions of the Bankruptcy Act. (*In re Winternitz,* 4 Bank Reg. (4to) 127; *Clarke* v. *Ray,* 1 Har. & J. 318; *Shepardson's Appeal,* 36 Conn. 23; *Geery's Appeal,* 43 Conn. 289;[1] *Simpson* v. *City Savings Bank,* 56 N. H. 466;[2] *Steelman* v. *Mattix,* 36 N. J. L. 344; *Martin* v. *Berry,* 37 Cal. 208.) Congress may enact a Bankruptcy Act for certain classes of creditors and leave to the several states the right to legislate upon the subject with reference to other classes. In such a case there can be no conflict of jurisdiction, as the legislation of the two governments is not upon the same subject. Each statute is operative within its own jurisdiction, and may be enforced without in any respect infringing upon the jurisdiction of the other.

The Bankruptcy Act passed by Congress in 1898 is not operative upon all classes of creditors or upon all classes of corporations. By section 4 of the act, corporations are expressly excepted from the provisions of the act in reference to voluntary bankrupts, and the provision in the same section, that ''any corporation engaged principally in manufacturing, trading, printing, publishing, or mercantile pursuits, owing debts to the amount of one thousand dollars or over, may be adjudged an insolvent bankrupt upon default or an impartial trial, and shall be subject to the provisions and entitled to the benefits of this act,'' limits the operation of the act in its provisions for involuntary bankruptcy to the classes of corporations there enumerated. Under this provision it is held that only the classes of corporations that are ''engaged principally'' in the pursuits thus enumerated can be adjudicated

[1] 21 Am. Rep. 653.        [2] 22 Am. Rep. 491.

bankrupt, and that the courts have no jurisdiction to entertain proceedings against any other class of corporations. The question is quite fully discussed in *In re New York etc. Water Co.*, 98 Fed. Rep. 711, where it is held that a water supply company is not within the provisions of the act; and it has been held in several cases that a mining corporation cannot be adjudicated a bankrupt. (*In re Elk Park Mining and Milling Co.*, 101 Fed. Rep. 422; *In re Rollins Gold and Silver Mining Co.*, 102 Fed. Rep. 982; *In re Chicago-Joplin Lead and Zinc Co.*, 104 Fed. Rep. 67; *In re Woodside Coal Co.*, 105 Fed. Rep. 56.)

The petition herein does not set forth the class of corporations to which the Grant Oil Company belongs or the nature of the business in which it is engaged, and is therefore defective, in not showing that it is a corporation which is within the scope of the Bankruptcy Act. (*Shepardson's Appeal*, 36 Conn. 23; *Geery's Appeal*, 43 Conn. 289.[1]) But in the answer of the respondent, which, upon the petitioner's motion for the issuance of the writ upon the pleadings, is to be assumed as a correct statement of the facts, it is set forth that the Grant Oil Mining Company is a corporation, and has at all times since its organization been engaged in the business of mining in this state, and has never been engaged in manufacturing, or trading, or printing, or publishing, or mercantile pursuits of any character. It follows that it is not subject to the provisions of the Bankruptcy Act of 1898, and that, consequently, the provisions of the insolvent law of this state applicable to such corporations have not been suspended, but are in full force. Under section 40 of that act its provisions apply to all corporations, and the action of the superior court was therefore within its jurisdiction.

The alternative writ heretofore issued is discharged, and the application for a peremptory writ is denied.

Garoutte, J., Van Dyke, J., McFarland, J., Henshaw, J., Temple, J., and Beatty, C. J., concurred.

[1] 21 Am. Rep. 653.