Louis Singer et al.

*v.*

The National Bedstead Manufacturing Company.

[Filed September 10th, 1903.]

1. The federal Bankrupt act (*Act of July 1st, 1898, ch. 541, 30 Stat. 544; U. S. Comp. Stat. 1901, p. 3418*) provides a system of bankruptcy for particular cases only, to which it applies; and hence a proceeding in bankruptcy against an alleged insolvent corporation does not supersede a proceeding in a state court under a state statute entitling stockholders and creditors to the appointment of a receiver for a corporation under certain circumstances, which relief *could not be granted under the* Bankrupt act.

2. Prior to the amendment of the Bankrupt act of February 5th, 1903, there was nothing in the Bankrupt act which makes the title of the trustee, appointed in bankruptcy proceedings against a corporation, reach back of the adjudication so as to take hold of assets lawfully vested in a state receiver, appointed under a state statute, whether the case presented to the state court in which the receiver was appointed was one of insolvency, violation of a statute, breach of condition, or anything else, provided the case so presented was one of which the bankrupt court could take no cognizance.

3. *Quære.* Whether the amendment to the Bankruptcy act of February 5th, 1903, when properly construed, produces a different result in the case of a receiver of an insolvent corporation appointed under the New Jersey statute.

4. The appointment or maintenance of a receiver by the court of chancery after the decree has passed placing an insolvent corporation under disabilities is entirely discretionary. Where the creditors and stockholders require no protection in respect of the assets through a receiver, there seems to be no reason for the appointment or maintenance of a receiver.

5. In the present case, the defendant corporation having been adjudged a bankrupt and a receiver having been appointed, and there being danger that the assets would be wasted in litigation—*Held*, that in the absence of any opposition by creditors, all of whom had been notified, an order would be made without passing upon the question of conflicting jurisdiction directing that the receiver of this court forthwith present his account, and that the assets, after deducting a proper allowance for the receiver, be turned over to the bankruptcy receiver or trustee.

On motion to discharge receiver of insolvent corporation.

*Mr. Louis G. Morten,* for the complainant.

*Mr. William A. Lewis,* for the defendant company.

*Messrs. Bedle, Edwards & Thompson,* for the receiver.

STEVENSON, V. C. (orally).

I shall advise an order that Mr. Mesereau be discharged from his office as receiver of this court in order that all complications may be avoided, and that the estate of the defendant corporation may be administered under the direction of the bankrupt court.

In order, however, to avoid any misapprehension in the future, I mean to express some of the views which I entertain in regard to the present situation and which control me in the action which I intend to take.

The bill in this cause was filed under section 65 of the Corporation act, and the defendant corporation appeared. Upon the summary investigation prescribed by the act, which was made without notice to creditors, the corporation was found to be insolvent and a decree thereupon was made enjoining it from the exercise of its franchises and also appointing a receiver. The decree also provided for giving notice to all the stockholders and creditors of a hearing at a future day upon the question whether the receiver so appointed should be continued or some other person should be appointed in his place. At the time fixed a great majority of the creditors appeared by various counsel and desired the appointment of Mr. Mesereau as their receiver. Mr. Mesereau, accordingly, was substituted as receiver

and the first one appointed was discharged. Each of these two receivers gave bond in the sum of $15,000. After the final decree in this cause was made and the receiver had been appointed, and had taken possession of the assets, application was made by three creditors to the United States district court for the district of New Jersey, sitting in bankruptcy, to have the defendant corporation adjudged bankrupt, the petition setting up the appointment of the receiver by the court of chancery as the act of bankruptcy. An adjudication of bankruptcy was thereupon made and an order was also made by the bankrupt court appointing Mr. Mesereau as receiver. This bankruptcy receiver also gave bond in the sum of $15,000. All the creditors were then brought before the court of chancery on an order to show cause obtained by the receiver, Mr. Mesereau, at the request of creditors, with a view of having some proper action taken which would prevent the waste of the assets in litigations growing out of the situation.

The constitution of the United States provides that congress may "establish uniform laws on the subject of bankruptcy throughout the United States." The required uniformity, as is stated in an opinion of the supreme court of the United States in a recent case, is merely geographical. That is to say, congress can pass any law on the subject of bankruptcy (and that term is conceded to include insolvency) which it sees fit to pass, however lacking in uniformity in its operation upon different classes of persons and kinds of property it may be, provided that such a law must operate in precisely the same way in all parts of the United States. Congress is not obliged to establish bankrupt courts for the administration of these uniform laws, nor is congress obliged to pass a *system* of bankruptcy laws.

Congress can pass one law on the subject of bankruptcy embodied in a few lines, or ten laws, or a "system" of laws. To the extent that congress covers the field, the state laws are suspended. If it covers only a part of the field, the remainder may be occupied by state laws.

It may be that congress cannot impose upon the state courts the duty of administering any system of bankrupt laws, but if congress sees fit to pass general laws on the subject of bankruptcy

without providing the judicial machinery for their administration, all state courts having jurisdiction of bankruptcy or insolvency cases would be obliged to enforce the laws on that subject enacted by congress, and any conflicting state laws or any state laws whatever applicable to the cases to which the federal laws applied would be suspended.

A very complete "system" of bankruptcy laws could, I think, be enacted by congress without creating any special bankrupt courts at all. Such a code would be enforceable by all the courts, state or federal, having jurisdiction of any case to which the code applied, the code being a part of the "supreme law of the land."

Of course, congress cannot extend its power to pass laws "on the subject of bankruptcy" by merely giving names to laws, or by arbitrarily defining certain conduct of natural persons or corporations as acts of bankruptcy. Congress is confined to the "subject of bankruptcy" as that subject was recognized in the jurisprudence of England and America in 1787.

In the present instance congress has seen fit to provide a more or less elaborate code of bankruptcy laws applicable to certain specified cases, and to erect special tribunals who have exclusive cognizance of those cases, and who have, to a large extent, exclusive jurisdiction to administer this code of laws. The result is that the state courts lose jurisdiction of those cases, if they ever had any, because state laws which are applicable to them are suspended, and the state courts are not permitted to administer the federal bankrupt law except to a very limited extent.

A more or less indefinite, and I think misleading, notion has sometimes been expressed that the constitution has committed to congress the whole subject of bankruptcy and insolvency for appropriate legislation, and that therefore whenever congress passes a general bankrupt law, which it has done four times, each time naming it a "uniform system of bankruptcy," all power on the part of the states to legislate upon the subject of bankruptcy or insolvency is immediately suspended. The premise may be deemed to be correct, but it seems to me that the conclusion is entirely erroneous. Congress is not obliged to legislate

on the whole subject of bankruptcy; it may deal with only one or several parts. It is the enactment by congress of a law applicable to a particular *case* which suspends any state law which otherwise would be applicable to that *case*. If every case of bankruptcy or insolvency were within the operation of a national bankrupt act, then no possible state law on the subject of bankruptcy or insolvency would have any vigor, but every such law would *ifso facto* be suspended.

When the present Bankruptcy act was under discussion in congress my recollection is that a large and influential body of our national legislators earnestly proposed to enact merely a voluntary law—a law under which debtors could come into a bankrupt court, lay down their assets and get a discharge. Would anybody seriously argue that if such a "uniform system of bankruptcy" had been enacted by congress that it would have had the effect to suspend the operation of state bankruptcy and insolvent laws under which insolvent debtors, or fraudulent insolvent debtors, are brought involuntarily into court and stripped of their assets for the benefit of their creditors?

The present "system of bankruptcy" which congress saw fit to enact in 1898 does not pretend to cover the whole field of either voluntary or involuntary bankruptcy and insolvency. Corporations are not allowed to become voluntary bankrupts. Large classes of natural persons and corporations are excluded absolutely from the operation of the involuntary system. All corporations, as well as natural persons, are excluded if their debts do not amount to $1,000. It would be a most extraordinary state of affairs if transportation companies, insurance companies and many other kinds of business corporations not within the classes enumerated in the present Bankrupt act, and also manufacturing, mercantile and trading corporations whose debts do not amount to $1,000, could not be subjected to the operation of our New Jersey statute, which provides a means for winding them up and distributing their assets. The result would be that such corporations, when insolvent, could not be wound up at all at the instance of their creditors. The Bankrupt act expressly provides that national banks and banks incorporated under state or federal laws shall not be adjudged involuntary bankrupts,

the intention plainly being to leave these respective banking corporations to be wound up under national or state statutes particularly applicable to them.

It is perfectly plain that state systems of voluntary and involuntary bankruptcy may remain to-day in full operation upon large numbers of insolvent natural persons and corporations who cannot be brought within the operation of the national Bankrupt act under any possible state of facts.

It is also, it seems to me, equally plain that a state system of involuntary insolvency also remains in full operation upon persons and corporations who are as possible bankrupts within the operation of the national Bankruptcy act, so far as the state system deals with *cases* of which the bankrupt courts under the federal act can obtain no jurisdiction. To state the point otherwise, I may say that to my mind there is no distinction between an insolvent insurance company, railroad company or laundry company which owes $1,000 of debts and has committed an act of bankruptcy, on the one hand, and an insolvent manufacturing, mercantile or trading company which has committed no act of bankruptcy or does not owe debts amounting to $1,000, on the other hand, in respect of the operation of the national Bankrupt act and the New Jersey Insolvent Corporation act. In neither instance is a *case* presented of which the federal bankrupt court can take cognizance. Each case, therefore, is within the full and complete operation of the New Jersey statute.

As I read the present Bankrupt act, the intention of congress is that every *case* of bankruptcy or insolvency of which the bankrupt court has jurisdiction is to be dealt with exclusively by that court. The intention of the act is to supply the law for certain *cases,* and to supply a special court to enforce that law. All other cases of bankruptcy or insolvency are left to be dealt with as the state legislature may see fit.

It may be conceded that congress can provide a law for only a limited number of cases of bankruptcy and insolvency, and expressly prohibit the enactment of any other bankrupt or insolvent laws by the states. For present purposes, the concession may be that congress might pass a voluntary system of bankruptcy and enact that there should be no other law on the

subject of bankruptcy or insolvency, voluntary or involuntary, throughout the United States. Even if this be a sound view it need not be considered, because the present Bankrupt act contains no words prohibiting states from passing insolvent or bankrupt laws which deal with *cases* which are not within the operation of the national Bankrupt act—which are expressly excluded from it. It would be a singular result, indeed, if because congress has not seen fit to provide a Bankrupt law applicable to corporations engaged in operating railroads, steamboats, insurance companies, laundries, livery-stables and large numbers of other business enterprises, the inference must be drawn that congress did not intend that any bankrupt or insolvent laws should be applied to this class of corporations, but that state insolvency laws applicable to them should be suspended.

So, also, where the corporation might be within the operation of the federal Bankrupt act, if it had committed an act of bankruptcy, it remains, it seems to me, without the scope of that act and within the full operation of state acts in respect of a charge of insolvency which includes no act of bankruptcy as defined by the Bankrupt act.

Of course, as I have intimated, it may be admitted that congress has the power to say in the Bankrupt act that no natural person or corporation, subject to its provisions, shall be liable to be involuntarily deprived of his or its property because of insolvency, at the instance of his or its creditors, under any state statute or in any state court. Congress, however, has said nothing of this kind, nor do I think can such an intention be gathered in any way from any or all of the provisions of the Bankrupt act.

The difficulty of finding such an intention in the present Bankrupt act is certainly greater in the case of our New Jersey legislation concerning insolvent corporations than it is in the case of natural persons under ordinary state bankrupt laws. Our legislation does not provide merely a creditors' suit for the sequestration of the assets of insolvent corporations. The direct object of the suit is to place the corporation under disabilities by an injunction which prevents it from exercising its fran-

chises.   The Bankrupt' act does not undertake to touch the
life of the corporation or its permanent capacity to exercise
its franchises.   It deals wholly with the assets of the cor-
poration.   After the bankrupt court has stripped a corporation
of its assets, the corporation is amenable to proceedings under
our state statute to have it disabled and then dissolved.   Our
state statute plainly remains at all times in full force for the
purpose of affording stockholders as well as creditors the remedy
of this statutory injunction, and not only the rights of stock-
holders, but the safety of the public also, must be recognized
and cared for in our statutory suit.   Is it possible that any
mind can be so astute as to discover in any of the language of
the Bankrupt act an intent that after the court of chancery of
New Jersey, under the statute of the state, has disabled one of
its corporations 'from the exercise of its franchises by an in-
junction in pursuance of the policy of the state, there must be
no sequestration of the assets of the corporation by a receiver
for the equal benefit of all the creditors, even though the bank-
rupt court has no jurisdiction to grant the creditors such relief?
The mischiefs of such a supposed situation are numerous and
manifest.

But if we must suppose that somewhere in the Bankrupt act
there lurks an intention to prevent creditors of insolvent cor-
porations from maintaining that part of the proceeding under
our act which consists in the distribution of the assets of an
insolvent corporation among its creditors, it would still seem
that all parts of our act, including the provision for a receiver
when one is necessary, would be fully operative for the pro-
tection of stockholders.   If the conclusion could be reached in
any way that congress intends that the creditors of an insolvent
corporation shall not be allowed to secure, under our statute,
the distribution of the assets of the corporation through a
receiver, it would require, I think, a further and deeper search
to find any expression of intention to deprive the stockholders
of this remedy of distribution which they now enjoy equally
with the creditors.   But I shall not pursue this subject further.
It has never, to my knowledge, been suggested that our New
Jersey statute has been suspended so far as it permits creditors

to institute the proceedings which it authorizes against insolvent corporations, while it remains unsuspended so far as it permits stockholders to institute these proceedings.

The whole case under our statute against an insolvent corporation is radically different from any case which can be brought against it under the Bankrupt act. Any stockholder, as well as any creditor, may institute the proceedings—may be the complaining party. Insolvency without any act of bankruptcy is the jurisdictional fact, and this insolvency is not the insolvency defined in the Bankrupt act, but common law insolvency of a certain kind and nature which the statute specifics. The direct and necessary decree, if any passes against the defendant, is for an injunction disabling the corporation from the exercise of its franchises. Subsequently an order may be made dissolving the corporation. The appointment of the statutory receiver is not a necessary part of the proceedings, and may not in fact take place. The corporation is first practically put to death, and then as a necessary consequence its assets, if there are any, are distributed first among its creditors and then among its stockholders. The bankrupt court has no jurisdiction of this case, or any part of it, and if congress intended, under its power to pass bankruptcy laws, to enact that in such a state proceeding the defendant corporation shall not be involuntarily deprived of its property for the equal benefit of its creditors, congress would certainly have made such an extraordinary declaration in unspeakable language. Such an intention cannot be established by remote inferences.

That no part of our New Jersey statute which we are considering has been suspended by the Bankrupt act, even in its operation upon those classes of corporations which are enumerated in the Bankrupt act and made the subject of its provisions, is now quite generally admitted in this part of the country. In the absence of bankruptcy proceedings the jurisdiction of the court of chancery under our statute is not, perhaps, very liable to be questioned. But conflicts of jurisdiction between federal and state courts in insolvency cases have taken place, or have been made possible, in instances where a case of insolvency has been presented to a state court under a state law,

and has been acted upon, and then subsequently an entirely different legal *case*, under the federal Bankrupt act, has been presented to the bankrupt court and action has been taken in that court. The result is that there are two receivers, as in the instance now before this court, each claiming the assets. It is this situation that I have been leading up to and which is the important matter to be discussed.

As the Bankrupt act stood until the recent amendments, I am unable to perceive how, when the court of chancery has acted under the New Jersey statute relating to insolvent corporations, has passed its disabling decree practically extinguishing the corporation, and has then, as a necessary result, appointed a receiver of the corporate assets, a receiver subsequently appointed by a bankrupt court—*i. e.*, appointed subsequent to the vesting of the assets in the chancery receiver under our statute or a trustee appointed under a subsequent adjudication of bankruptcy—can acquire any title to those assets.

The title which the trustee in bankruptcy takes is defined in the Bankrupt act and practically includes only the property which belonged to the bankrupt at the time of the adjudication, and property theretofore transferred by him by way of preference or in fraud of creditors.

But it has frequently been said, in a general way, that it is the policy of the Bankrupt act to have the assets of bankrupts administered by the bankrupt court. This is true, but only in the *cases* for which the Bankrupt act makes provision. If the Bankrupt act makes provision for one case of insolvency and leaves another case to be dealt with by a state law, the two cases are not related to each other because they are both cases of insolvency. The case left under the operation of the state law is not recognized as a case of bankruptcy by the Bankrupt law. I know of no more reason why the subsequent bankruptcy trustee should take the assets in the course of administration from the prior chancery receiver, under our Insolvent Corporation act, than there would be for his taking the assets from a receiver appointed as the result of a judgment in an action of *quo warranto*. All cases which are not cognizable by the Bankrupt act, but which warrant the appointment of a receiver

by a state court, seem to constitute one class, and to be indistinguishable from each other with respect to bankruptcy proceedings. I fail to find in the provisions of the original Bankrupt act of 1898, which defines the title which the bankruptcy trustee takes, or any other provision of that act, any justification for the proposition that a subsequent bankruptcy receiver or trustee can take possession and administer assets of the bankrupt corporation which, prior to the adjudication of bankruptcy, have been lawfully vested in a receiver appointed by a state court under a state statute, which remains unsuspended by the Bankrupt act. Nor can I see that it makes the slightest difference whether the *case* against the corporation cognizable by the state court under the state statute is one of common law insolvency or of some special statutory insolvency to which no national bankrupt act, perhaps, could extend, or of forfeiture of franchises for breach of condition, or any other ground for the extinction of a corporation and consequent administration of its assets by a receiver. As I have tried to explain before, it is the *case*— *i. e.*, the state of facts presented to the court upon which remedies are prayed for—which must be looked at in order to determine what law is to be applied. If the case which the state court deals with is not cognizable in the bankrupt court, then not only the state statute remains unsuspended by the Bankrupt act, but the state receiver appointed under that statute clearly takes a legal title, which is not divested by a subsequent bankruptcy trustee.

An erroneous notion, according to my view, has been expressed to the effect that even though our state statute may remain in full force, yet when bankruptcy proceedings are started in some mysterious way the state act and proceedings thereunder become void as against the Bankruptcy act and proceedings. In brief, the state proceedings are considered a fraud upon the Bankrupt act when the latter is actually applied to the corporation, which is the subject of the state proceedings, with intent to administer the assets of the corporation. In support of this view, reference may be made to the doctrine which was established soon after the passage of the present Bankrupt act, that the trustee in bankruptcy takes title to the assets which the bankrupt has

transferred to a general assignee, without preference, prior to the adjudication in bankruptcy. But the Bankrupt act made such a general assignment an act of bankruptcy. In the case of natural persons, also, the Bankrupt act provides by its voluntary system of bankruptcy for the very situation presented by a general assignment, and provides remedies for the debtor and his creditors arising out of that situation. The debtor, other than a corporation, who undertakes to make a general assignment of his estate so that the same may be administered under a state law, is deliberately avoiding and evading the provisions of the Bankrupt act, and is proceeding in defiance of its policy. He, plainly, is perpetrating a fraud on the act. It was thought to be an intolerable situation that while the assignor might be adjudged bankrupt because of his general assignment as an act of bankruptcy, nevertheless the general assignment should stand and the estate be administered by the assignee selected by the bankrupt, in violation of the spirit and intention of the Bankrupt law with reference to the voluntary transfer by insolvent natural persons of their estates for the benefit of their creditors. In dealing with unscientific statutes like the Bankrupt act courts naturally become courageous, and it is not surprising that, notwithstanding the definition of the title which the trustee in bankruptcy takes, contained in the Bankrupt act, did not include assets transferred by the bankrupt prior to the adjudication by a general assignment for the equal benefit of creditors, still an intention that such assets should go to the trustee in bankruptcy was derived from a perusal of the whole act.

I think, however, that none of the reasons which led the federal courts to the conclusion which I have stated in regard to general assignments apply to a receivership under our Insolvent Corporation act. Neither our statute nor proceedings instituted under it at the instance of creditors can, I think, be shown to be in fraud of the spirit or purpose of the Bankrupt act, or in any way violative of its policy. In the first place, it may be observed that so far as the corporation may be deemed an actor in the proceedings, or a willing subject thereof, it (the corporation) is not evading the provisions or the policy of the

Bankrupt act, because the Bankrupt act has shut the door of the bankrupt court in the face of the corporation.

But the great point of distinction lies in the fact that the creditors of the insolvent corporation who bring their debtor corporation into the state court for relief have no remedy whatever in the bankrupt court; the door of the bankrupt court is also shut in their face. The state court, at their instance, has dealt with a case of which the bankrupt court can take no cognizance, and has provided remedies appropriate to that case. By what possible course of reasoning can creditors be charged with committing a fraud upon or violating the policy of the Bankrupt act when the Bankrupt act does not recognize their case or afford them any remedies for their grievance?

Even if, as a matter of fact, an insolvent corporation has committed an act of bankruptcy, the creditors who bring it, as a mere insolvent, into the state court, are not bound to know of the act of bankruptcy, and may in fact not have notice of it, or may not be able to prove it. Their *case,* under the state statute, should not be thrown out of the state court, because if they had the requisite amount of information and the requisite amount of proof they might bring an entirely different legal case in the bankrupt court, and then that court would give them a part of the relief which they seek to obtain in the state court.

If the Bankrupt act remained to-day as it was originally enacted in 1898, I should feel constrained to hold, until the federal courts should speak with authority on the subject, that a receiver under our statute would hold title to the assets of an insolvent corporation against a receiver in bankruptcy subsequently appointed, and against a trustee in bankruptcy appointed by virtue of a subsequent adjudication of bankruptcy. I should hold that there is nothing in the Bankrupt act which makes the title of the trustee in bankruptcy reach back of the adjudication so as to take hold of assets lawfully vested in a state receiver appointed under a state statute, and that it would make no difference whether the case presented to the state court in which the receiver was appointed was one of insolvency, violation of a state law, breach of condition or anything else,

provided the case so presented was one of which the bankrupt court could take no cognizance.

But we have not to deal with the original Bankrupt act. Last winter a very peculiar amendment of that act was enacted by congress. The section of the statute which defines acts of bankruptcy was amended so as to make it an act of bankruptcy, *committed* by a corporation, "when because of insolvency a receiver or trustee has been put in charge of its property under the laws of a state, or territory, or of the United States." In the present condition of federal and state legislation that certainly seems to be a most extraordinary act of bankruptcy, and state courts must necessarily await the exposition and construction of this singular piece of legislation by the federal courts, who are its authoritative interpreters. If the inferior federal courts agree, probably their construction will stand the final test; if they disagree, we may have to wait for years to hear from the supreme court of the United States so as to find out what the real law is.

While I do not intend to attempt to construe this amendment, it may be worth while to consider briefly some of the questions which are presented on its face.

The receiver must be put in charge of the property of the debtor "because of insolvency." Now, it may be questioned what is meant by the word "insolvency." The Bankrupt act defines the word "insolvent" as something altogether different from a common law insolvent. The Bankrupt act further provides that the words and phrases which it defines shall be taken in the sense so defined, excepting where the context shows that another sense is intended. If the definition of the word "insolvent" in the Bankrupt act carries with it, as it seems to do, a corresponding definition of the word "insolvency," the proposition appears to be incontrovertible that no receiver is ever put in charge of the property of an insolvent corporation under our statute "because of insolvency," within the meaning of the Bankrupt act.

A corporation may be hopelessly insolvent under our statute and yet be entirely solvent under this definition of the Bankrupt act. Insolvency under this definition is not the subject

of investigation in our statutory suit. Probably it would not be argued that the word "insolvency" would include insolvency as arbitrarily defined by a state statute, but unknown both to the common law and to the bankrupt law. If corporations entirely solvent, able to pay their debts as they come due, were arbitrarily defined as insolvent by a state statute whenever they lost one-half of their capital and were subjected to insolvency proceedings on that ground, I do not suppose that such a case of "insolvency" would be deemed within the meaning of the amendment which we are considering, if, indeed, congress would have the power to make the appointment of a receiver in such a case an act of bankruptcy.

It may also be questioned whether a receiver is put in charge of the assets of a corporation under our statute "because of insolvency" of any kind whatever. The immediate cause of the vesting of the assets of a corporation in a receiver under our statute is not any condition of insolvency, however defined, but the practical suspension of the life of the corporation by the injunction, which disables it from exercising its franchises. Our statutory receiver can never be appointed excepting as the result of the final decree disabling the corporation by enjoining it from the exercise of its franchises. The assets of a corporation after judgment of forfeiture are put in charge of a receiver because of that judgment of forfeiture, and not because of the particular ground upon which the judgment of forfeiture was based. The basis of the judgment in a *quo warranto* case, like the basis of the decree disabling the corporation under our statute, may be deemed the remote as distinguished from the immediate because of the receivership. The receivership is caused by the absence of the active corporation—by a situation which demands a custodian and caretaker of property which otherwise would be exposed to injury and waste. The cause of this situation may be insolvency, or may be a large number of other facts and conditions. There seems to be some room to question whether it was the intention of this amendment of the Bankrupt act to set the bankrupt courts inquiring back of the decree disabling or dissolving a corporation, which makes a receivership necessary, into the nature of the grounds upon

which not the appointment of the receiver was based, but the decree disabling or dissolving the corporation was based. A man's estate is administered because of his death, while his death is caused by a particular disease. One would hardly say that the administration of the estate is "because of" the particular disease which killed the man.

There are other questions raised by this peculiar amendment of the Bankrupt law which are certainly interesting, although they are not presented by the case now before this court. Some of them are liable, however, to come up at any time. It may be doubted whether the *temporary* putting in charge of the assets of the debtor because of insolvency constitutes this novel act of bankruptcy, or whether such putting in charge must be permanent. Sometimes, upon filing a bill under our statute against a corporation charging it with insolvency, a receiver is at once appointed of all the assets of the corporation, such appointment being made under the general equity power of the court. A receiver appointed in this manner prior to the decree for an injunction does not take title under the statute, but is a mere custodian. Is such a receivership an act of bankruptcy on the part of the unfortunate corporation? If so, in case upon the return of the order to show cause a summary investigation results in favor of the defendant corporation, and the order is discharged and the receivership vacated, and the assets ordered delivered back to the corporation, is the act of bankruptcy which consisted in the receivership vacated or attoned for in any way? After the temporary receiver in such a case has been put in charge "because of insolvency," could any three creditors of the corporation have it adjudged a bankrupt? If so, what would be the effect of an order in the state court vacating the receivership?

Take the case of equity suits in the court of chancery of New Jersey, or in the United States circuit courts sitting in equity, the object of which is to dissolve a partnership on the ground of insolvency and secure an accounting and all other remedies incident to a partnership settlement in court. Is the appointment of a receiver in such a case an act of bankruptcy which can result in transferring the administration of the partnership

assets to the bankrupt court, while the accounting and other remedies remain to be afforded by the court of chancery or the United States circuit court in which the equity suit was originally brought?

This court does not intend to struggle with any of the legal questions raised by this curious piece of federal legislation which establishes this novel act of bankruptcy, because the United States district court for the district of New Jersey, sitting in bankruptcy, has decided that the appointment in this case of a receiver of an insolvent corporation by the New Jersey court of chancery under the New Jersey statute—that is to say, the appointment of a permanent statutory receiver after the decree for an injunction—is an act of bankruptcy, as defined by the amended Bankrupt act. I do not propose to question the soundness of this decision, which no doubt was based upon a far more careful examination and consideration of the law than I have attempted to give. Conflicts between receivers appointed by different courts, and especially conflicts between federal and state receivers, are to be avoided in every possible way.

Nor do I propose to raise the question whether, assuming the appointment of the receiver by this court to be an act of bankruptcy committed by the corporation, it follows that the bankruptcy receiver and trustee will take title to the assets already vested in the receiver of this court. It certainly does not follow that because a transfer of property is made an act of bankruptcy that therefore such property is recoverable by the bankruptcy trustee. There is also a wide distinction between a general assignment, especially by a natural person, and the appointment in *invitum* of a receiver under our statute even, although both of these things may now be acts of bankruptcy. Still it may be that the federal courts will hold that any transfer, voluntary or involuntary, by or from an insolvent corporation of all its assets, which is made an act of bankruptcy, is void as against the receiver or trustee of the bankrupt court appointed in proceedings based on the transfer as an act of bankruptcy. I refrain from considering this question. A part of the reasoning by which the title of the trustee in bankruptcy

was extended to assets transferred under a general assignment for the equal benefit of creditors applies to the case now before this court, and a part does not. It is plain that the proceedings in bankruptcy against the insolvent corporation now before this court have been conducted upon the theory that the bankruptcy receiver and trustee would have a title to the assets of the corporation which would overreach and displace the title which the receiver appointed by this court holds under our statute.

In this situation there is certainly room for litigation. Such a litigation might go to the supreme court of the United States before those unfortunate creditors would find out who their administrator in fact was. They do not care whether the assets are collected and distributed by the receiver of this court or a trustee in bankruptcy, and they certainly do not want to have the assets wasted in an expensive litigation to determine this question of the jurisdiction of the two courts.

The appointment of a receiver by the court of chancery, after the decree has passed placing an insolvent corporation under disabilities, is entirely discretionary. The receiver is appointed to protect the creditors and stockholders. If there are no assets, no receiver is necessary and none will be appointed; if the creditors require no protection in respect of the assets through a receiver in a case like this, there seems to be no reason for the appointment or maintenance of a receiver. All the creditors have been brought into court and no opposition has been made to the discharge of the receiver of this court. Such a course is manifestly greatly to the advantage of all the creditors. Therefore, the order of this court will direct that the receiver of this court forthwith present his account and report, that proper allowances to the two receivers of this court be paid, and that the residue of the assets be turned over to the bankruptcy receiver, and that the receiver appointed by this court be thereupon discharged from his office. This order will be made without any attempt on my part to decide any of the questions of conflicting jurisdiction to which I have referred. A situation similar to the one now before this court may justify a test suit to settle the law and ascertain the limits of the two jurisdictions.

I merely decide that this is not the sort of a case in which
such a test suit should be brought at the expense of this par-
ticular set of creditors, who are entirely willing to have either
the state court or the bankrupt court administer these assets;
or, at any rate, are opposed to any litigation over the question.

The attention of the bar of this state may well be called to the
extraordinary condition in which the law relating to insolvent
corporations in New Jersey now stands under this recent amend-
ment of the Bankrupt act as construed by the United States
district court for the district of New Jersey. In large numbers
of cases of corporation insolvency, I think I may say in the
majority of such cases, including those especially where the
assets are of great value, no act of bankruptcy has been com-
mitted by the corporation when the creditors come into this
court for relief. What the creditors desire is to prevent acts
of bankruptcy, such as fraudulent and preferential transfers.
The corporation being insolvent and incapable of pursuing its
corporate objects, it is arrested in the exercise of its franchises
and placed under disabilities, and then its assets are distributed
without preference among its creditors. In this situation—the
common, every-day situation presented to this court—the cred-
itors have no relief in the bankrupt court whatever. They are
obliged, therefore, to come into this court as the only court hav-
ing jurisdiction of the case which they present. The proceed-
ings under our staute are not comparable with the voluntary
making of a general assignment by an insolvent debtor. The
creditors of the insolvent corporation start an expensive suit
in this court, which oftentimes is contested by the defendant
corporation. The litigation between the creditors and the cor-
poration may go to the court of errors and appeals, and may
be decided in favor of the creditors or in favor of the cor-
poration. In the course of the proceedings all the creditors
under our practice are brought into court, and frequently many
lawyers are employed to represent the different creditors. The
appointment of a receiver is a judicial act, unlike the selection
of an assignee by a debtor who makes a general assignment.
It may be noticed, also, that first a temporary and then a per-
manent receiver may be appointed by this court, who will often

greatly change the character of the assets and set in operation plans for the continuation of the corporate business. The creditors also, or stockholders, may take many and expensive steps in the direction of reorganization.

And yet after all the expense to which I have referred has been incurred, it seems that any three little creditors of the corporation, whose debts amount to $500, have the arbitrary right, within four months after the appointment of the receiver, to institute bankruptcy proceedings and have the administration of the assets of the corporation transferred from this court to the bankrupt court. These three creditors may apply to the bankrupt court because their wishes have not been carried out in the selection of a receiver in this court, or because their attorneys desire to make fees, or other unjustifiable motives may prompt their action which can readily be imagined.

In the present case before this court we have four different trustees in line, all of whom have given or will give bonds, and must be paid for their services out of the estate. We have, first, the temporary receiver appointed by this court; we have, next, the permanent receiver appointed by this court; we have, in the third place, the receiver appointed by the bankrupt court, and in the fourth place we shall have a trustee to be appointed by the bankrupt court.

It is unnecessary to further deal with the evils of a situation which are so conspicuous. If the construction of this amendment of the Bankrupt act adopted by our federal court is correct, the evil to which I have referred would be remedied if congress would either take a step backward or a step in advance. If the backward step is not to be taken by the repeal of this amendment, then the forward step would be to give the bankrupt courts jurisdiction of all these cases of insolvent corporations, of which the court of chancery and corresponding courts in other states now have exclusive jurisdiction. The jurisdiction of the court of chancery and of the supreme court of the State of New York, and in some cases of the United States circuit courts now, at the option of three small creditors, is abrogated excepting that its exercise is made the basis of jurisdiction by the federal bankrupt court. Would it not be far better to give

the bankrupt court original jurisdiction, so to speak—*i. e.,* jurisdiction of the *case* upon which the state court, under the state statute, is called upon to act? A brief amendment to the Bankrupt act, providing that .whenever a corporation becomes insolvent according to the common law definition, so that it is not able to continue its business with advantage to the stockholders and safety to the public, it may be adjudged a bankrupt at the suit of its creditors, might be· so drawn as to suspend the operation of the New Jersey statute upon those classes of corporations which are made subject to the provisions of the Bankrupt act, so far as their ·assets are concerned. Under such a condition of the law the entire administration of the assets of the insolvent corporations would be vested exclusively in the bankrupt court. Such a transfer of business from this court to the bankrupt court would certainly be a great relief to this court. The court of chancery is occupied a large part of the time in taking ·care of the affairs and settling disputes that arise in entirely solvent corporations, and many would deem it wise and in accordance· with the general policy of the United States, to have the administration of the assets of all insolvent corporations of the classes enumerated by the Bankrupt act, whose debts amount to $1,000, committed exclusively to the federal bankrupt courts.