DAVID PITCHER, EXECUTOR, *vs.* CLARK H. STANDISH.

Second Judicial District, Norwich, April Term, 1916.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

The Bankruptcy Act of 1898 suspended and holds in abeyance all insolvency laws of the several States then in existence or subsequently passed, which conflict with it.

State laws are in conflict with a Federal law when the two cover the same field, or the subject-matter of the State law is within the purview of the Federal legislation.

The power and jurisdiction of the States in the field of insolvency legislation is full and complete except as Federal legislation has invaded and thereby limited it; and it is limited by such legislation only to the extent of that invasion.

It is well settled that the State insolvency laws remain in force as to classes of persons expressly excepted from the operation of the Federal Act, and classes which these provisions do not reach; and the same rule should apply to classes of cases not within the scope of the Federal Act.

The State court is without jurisdiction over a voluntary proceeding in insolvency by a farmer, because the Federal Act permits farmers to

institute voluntary proceedings in bankruptcy; but the provision that a farmer cannot be adjudged a bankrupt in involuntary proceedings leaves that field open to State action, and the probate courts of this State, therefore, have jurisdiction of involuntary proceedings against farmers under our Insolvency Act.

Argued April 26th—decided June 27th, 1916.

APPEAL from an order and decree of the Court of Probate for the district of Lebanon adjudging the defendant to be an insolvent debtor and appointing a trustee to administer his property, taken by him to and reserved by the Superior Court in New London County, *Shumway, J.,* upon the plaintiff's demurrer to the reasons of appeal, for the advice of this court. *Judgment advised for plaintiff.*

*Thomas M. Shields,* for the defendant.

*William A. King,* for the plaintiff.

PRENTICE, C. J. This is an appeal from an order and decree of a Court of Probate, passed upon the petition of the plaintiff, a creditor, adjudging the defendant, a person engaged chiefly in farming and the tillage of the soil, to be an insolvent debtor, and appointing a trustee in insolvency to take possession of, manage and dispose of his estate as provided by the insolvency laws of this State. The person so declared an insolvent debtor appeals for the sole reason that the Court of Probate was without jurisdiction or authority to make the order and decree, since the statutes of the State purporting to confer such jurisdiction and authority were rendered inoperative by reason of the existence of the Federal Bankruptcy Act then in force. This reason of appeal is demurred to, and the question thus presented reserved for our advice.

It is undoubted law that the enactment by Congress

of the Bankruptcy Act of 1898 suspended and held in abeyance during its existence all insolvency laws of the several States then in existence or subsequently passed conflicting therewith. *Sturges* v. *Crowninshield*, 17 U. S. (4 Wheat.) 122, 208; *Ogden* v. *Saunders*, 25 U. S. (12 Wheat.) 213; *Baldwin* v. *Hale*, 68 U. S. (1 Wall.) 223, 229; *Tua* v. *Carriere*, 117 U. S. 201, 210, 6 Sup. Ct. 565. State laws are in conflict with Federal, within the meaning of this statement of principle, when the two cover the same field, or the subject-matter of the State law is within the purview of the Federal legislation. *Ex parte Eames*, 2 Story (U. S. C. C. Rep.) 322, 326; *Harbaugh* v. *Costello*, 184 Ill. 110, 113, 56 N. E. 363; *Ketcham* v. *McNamara*, 72 Conn. 709, 711, 46 Atl. 146.

In consonance with this principle we have held that our State courts were without jurisdiction in voluntary insolvency of a farmer, since the Federal Bankruptcy Act provides for the distribution of his estate among his creditors by proceedings in voluntary bankruptcy. *Rockville National Bank* v. *Latham*, 88 Conn. 70, 89 Atl. 1117.

The case now before us presents a different situation and a more difficult question. The proceedings, in the course of which the order and decree appealed from were passed, were in involuntary insolvency, while the Bankruptcy Act expressly excepts farmers, as well as wage-earners and debtors owing less than $1,000, from the category of those who may be adjudged involuntary bankrupts. Bankruptcy Act, § 4. The question we have to determine thus becomes narrowed to one whether or not the provisions of our State law providing for involuntary insolvency are suspended and rendered inoperative as to farmers by the existence of the Federal law which provides for the voluntary but not involuntary bankruptcy of that class of persons.

The question thus presented has not, as far as we are aware, been before the Supreme Court of the United States for authoritative determination, and we are left to answer it with only such help as may come from the few decisions of the State and inferior United States courts which have had occasion to give utterance to their views upon the subject. These decisions are not in full accord.

In *Littlefield* v. *Gay*, 96 Me. 422, 52 Atl. 925, the court squarely decided that the existence of the Bankruptcy Act deprived the State courts of all jurisdiction, in either voluntary or involuntary insolvency, in the case of an insolvent debtor owing less than $1,000, who in the Act is classed with the farmer. The reason given was, in substance, that as the Act provided that such person might voluntarily invoke the aid of the Federal courts, and thereby put an end to the jurisdiction of the State court assumed in involuntary proceedings, it followed that he and his property were subjected to the Bankruptcy Act and brought within its purview.

The defendant cites *Parmenter Mfg. Co.* v. *Hamilton*, 172 Mass. 178, 51 N. E. 529, in support of his contention that State jurisdiction in cases like his has been suspended. Despite the broad language used in the closing sentence of the opinion, we fail to find justification for this citation. The question involved in the case was one as to the date when the Bankruptcy Act took effect and the State courts, as a consequence, lost their jurisdiction. In the course of its brief opinion the court refers to the Act as superseding, from the time it took effect, all conflicting State provisions, and in another place says that the rights of all persons "in the particulars to which the Act refers" are to be determined by the Act. Nowhere is it said or intimated that the Act supersedes other than conflicting provisions until, in its concluding sentence, the court says

that it is of the opinion that the new system of bankruptcy superseded "all State laws in regard to insolvency from the date of the passage of the statute." Evidently the court had here in mind the date of the suspension created by the statute, and not the scope of that suspension, and the court did not mean to assert the untenable doctrine that all insolvency legislation, whether conflicting or not, was rendered inoperative by the passage of the Act.

*Closser* v. *Strawn*, 227 Fed. Rep. 139, 146, is another case referred to by the defendant. It was a case in the District Court of the western district of Pennsylvania, involving a question arising out of the voluntary assignment by a farmer under the Pennsylvania laws. In the course of his opinion the district judge made a correct statement of the pertinent principle that, the Bankruptcy Act being in force, no farmer who declined to avail himself of its provisions could avail himself of the insolvency Act of Pennsylvania, and then added, "or be subjected to the requirements of that Act." For this last *obiter dictum* assertion he assigns no reason beyond that contained in the general proposition that where Congress has exercised its power over a subject the control of the States over that subject is prohibited. He seems to have assumed that what Congress has done as respects the insolvent condition of farmers, wage-earners, and small debtors, amounts to an exercise of control over that whole subject.

Cases either expressly, or by plain implication, holding a contrary doctrine, include *Old Town Bank* v. *McCormick*, 96 Md. 341, 351, 53 Atl. 934; *Lace* v. *Smith*, 34 R. I. 1, 12, 82 Atl. 268; *Keystone Driller Co.* v. *Superior Court*, 138 Cal. 738, 742, 72 Pac. 398; *Singer* v. *National Bedstead Mfg. Co.*, 65 N. J. Eq. 290, 55 Atl. 868; *Citizens Nat. Bank* v. *Gass*, 29 Pa. Super. Ct. 125; *Rittenhouse's Insolvent Estate*, 30 Pa. Super. Ct.

468.   The Maryland case above cited contains the most satisfactory and convincing discussion of the subject which has come under our notice, and with most of its reasoning we heartily concur.

It is undoubted law that the Federal Act does not suspend the operation of State laws in so far as the latter affect classes of persons which are expressly excepted from the operation of its provisions, or which those provisions do not reach.   Such classes include municipal, railroad, insurance and banking corporations, which the Act expressly excepts.   *Sturges* v. *Crowninshield,* 17 U. S. (4 Wheat.) 122, 195; *Herron Co.* v. *Superior Court,* 136 Cal. 279, 282, 68 Pac. 814; *Old Town Bank* v. *McCormick,* 96 Md. 341, 352, 53 Atl. 934; *Simpson* v. *City Savings Bank,* 56 N. H. 466.   Equally, and for the same reasons, it must be true that whatever classes of cases are either expressly excepted from the operation of the Bankruptcy Act, or lie outside of the reach of its provisions, are left subject to state regulation.   Such classes of cases and the conditions and situations which produce them are not within the field covered by the Federal Act, and legislative provisions concerning them by the States cannot be said to be in conflict in any way with the Federal legislation.   The power and jurisdiction of the States in the field of insolvency regulation is full and complete except as Federal legislation may invade and thereby limit it; and it is limited by such legislation only to the extent of that invasion.   Wherever the field is not thus restricted, it must follow as a logical consequence that the power of the States remains. The field of restriction certainly cannot be broader than that of the operation of the Federal statute.   In other words, the test to be applied in determining whether or not the Federal Act suspends State laws is not one based upon a classification of persons, but upon a less arbitrary and more logical and just classification of

cases, situations and conditions, in so far at least as they fall into clearly defined groups. Otherwise some portion of the proper field of bankruptcy and insolvency legislation is quite likely to remain unoccupied. *Sturges* v. *Crowninshield,* 17 U. S. (4 Wheat.) 122, 195; *Ex parte Eames,* 2 Story (U. S. C. C. Rep.) 322, 326; *Singer* v. *National Bedstead Mfg. Co.,* 65 N. J. Eq. 290, 294, 55 Atl. 868; *Herron Co.* v. *Superior Court,* 136 Cal. 279, 282, 68 Pac. 814; *Lace* v. *Smith,* 34 R. I. 1, 12, 82 Atl. 268; *In re Macon Sash, Door & Lumber Co.,* 112 Fed. Rep. 323, 331.

The pertinent questions thus are: Does the Federal Act, in the purpose and intent of its framers, cover the field which these cases, situations and conditions occupy? Did Congress intend to bring them within its purview and make its provisions in view of them and to govern them? If so, the Federal Act is paramount and exclusive: if not, it does not invade the province of State legislation, and leaves such legislation free to provide for them. As Chief Justice Marshall, referring to insolvency matters, said in *Sturges* v. *Crowninshield,* 17 U. S. (4 Wheat.) 122, 195: "It may be thought more convenient, that much of it should be regulated by State legislation, and Congress may purposely omit to provide for many cases to which their power extends. It does not appear to be a violent construction of the Constitution, and is certainly a more convenient one, to consider the power of the States as existing over such cases as the laws of the Union may not reach."

It would thus appear that the crucial inquiry in this case is as to the intent of Congress in framing the provisions of the Bankruptcy Act, and that intent must be gathered from the language of the Act examined in the light of the subject with which it deals and the remedial purposes of legislation upon that subject.

Its remedial provisions are extended to the farmer, in that the door of voluntary bankruptcy is open to him. On the other hand, it is expressly provided that he may not be adjudged an involuntary bankrupt. Did Congress, in so legislating, intend to cover the whole field of his insolvent condition, and intend to provide in his case and in that of the wage-earner and the small debtor, who were classed with him, that the only means of securing the equal distribution of his assets among his creditors should be through the medium of voluntary bankruptcy, or was its intent and purpose to leave the matter of securing such distribution upon the initiative of creditors untouched, and therefore subject to the regulation of the States? By the exception of municipal, railroad, insurance and banking corporations from the operation of both voluntary and involuntary bankruptcy provisions, as made in § 4, it clearly was not intended that there should be no State regulation as to those corporations when insolvent, and therefore none at all. Shall a different intent be drawn when the farmer, wage-earner and small debtor are excepted from the operation of its involuntary operations only? Shall we say that the one exception implies no intent to legislate for persons within the classes named while the other exception does? If so, it must be for the sole reason that some provision was made for the latter class, that is one permitting them to become voluntary bankrupts.

We take it to be well settled that the intent to supersede the execution of State powers in respect to matters not covered by direct Federal legislation is not to be inferred from the mere fact that Congress has seen fit to circumscribe its regulations and to occupy a limited field. *Savage* v. *Jones*, 225 U. S. 501, 533, 32 Sup. Ct. 715. The controlling question here is whether or not Congress has chosen to occupy a limited field.

Judge Taft, in *Leidigh Carriage Co.* v. *Stengel,* 37 C. C. A. 210, 220, 95 Fed. Rep. 637, has stated the proper purposes of a Bankruptcy Act to be: "First . . . to enable creditors to protect themselves by summary process against the frauds of their debtors in evading the payment of debts; second, to distribute the assets of the debtor equally among his creditors; and, third, to relieve debtors from the burden of debts which, through business misfortunes and otherwise, they have incurred, and which they are unable to pay." And again he pertinently says that the involuntary feature of insolvency and bankruptcy laws is chiefly directed against frauds upon creditors. P. 221. With no provision for involuntary proceedings in the case of an insolvent person in either the Federal or State courts, the first two of the three purposes above enumerated are only meagerly satisfied, and the chief object aimed at by involuntary proceedings entirely missed. Creditors are left to the ordinary, and frequently inadequate, machinery of the law or the debtor's volition for their protection. They are powerless to compel an equal distribution of his assets among them. He may confer the favor of such a distribution upon them. They cannot secure it against his will. We can hardly assume that Congress intended to deprive creditors of that right, generally if not universally accorded to them by the States. If the existence of the Bankruptcy Act forbids all State legislation dealing summarily with the insolvent condition of farmers, wage-earners and small debtors, its effect is to deprive their creditors of rights they have long enjoyed and which the creditors of other persons are permitted to enjoy. We can more readily believe that Congress deemed it wiser that Federal jurisdiction be not assumed in the matter of proceedings *in invitum,* and that such action be left for State regulation as local conditions might seem to

require. True the debtor might, if he preferred, avail himself of the voluntary provision of the Federal law and oust the State courts of jurisdiction, once assumed, but he need not do so, and whether he did so or not, he could not defeat the desire of his creditors for an equal distribution of his assets among them.

Upon this aspect of the case the following observations in *Geery's Appeal*, 43 Conn. 289, 302, are peculiarly pertinent: "The equal distribution of a bankrupt's property among his creditors is a leading and prominent feature of both national and state laws. It has now become a controlling principle in the laws relating to debtor and creditor. Upon the belief that it will be strictly applied and faithfully administered, in case of bankruptcy, the business of the country is carried on and credit given. The benefit of this principle cannot be denied to a creditor who is in no fault without doing him injustice. It is a remedy upon which he relied in giving credit and to which he is fairly entitled. If that remedy is not to be found in the Bankrupt Act, it will not be presumed that Congress intended to take away the remedy provided by the state."

We are of the opinion that Congress did not intend to bring the situation, created by the unwillingness of insolvent farmers, wage-earners and small debtors, to submit themselves of their own volition to the jurisdiction of the Federal bankruptcy courts for the equal distribution of their estates among their creditors, within the purview of the Bankruptcy Act, or to cover the field created by that condition, not unlikely to arise, and that the provisions of our State legislation regulating such situations and conditions are, therefore, not suspended and rendered inoperative by reason of the existence of the Bankruptcy Act.

The Superior Court is advised to enter up judgment sustaining the demurrer to the defendant's reasons of

appeal, dismissing the appeal and affirming the order and decree appealed from.

Costs in this court will be taxed in favor of the plaintiff.

In this opinion the other judges concurred.