## ADRIAN STATE BANK AND ANOTHER v. CHARLES H. KLINKHAMMER.[1]

December 12, 1930.

No. 28,107.

*J. A. Cashel,* for appellant.
*Canfield & Michael,* for respondents.

[1]Reported in 233 N. W. 588.

LORING, J.

This suit was brought in an attempt to invoke the involuntary provisions of G. S. 1913, c. 90, as against the defendant, who is a farmer and is not subject to the involuntary provisions of the national bankruptcy act. Upon the filing of a petition under the provisions of c. 90, the district court appointed a receiver for the purpose of carrying out the provisions of that chapter. From the order appointing such receiver this appeal is taken.

Chapter 90 has been omitted from G. S. 1923 and from 2 Mason, 1927, for the reason that the compilers of those statutes considered that c. 90 is inoperative while the national bankruptcy act is in force.

The sole question presented by this appeal is whether or not the involuntary provisions of c. 90 may be invoked against a person who is not subject to the involuntary provisions of the national bankruptcy act. The district court held that c. 90 could be invoked for that purpose, and there is very respectable authority to that effect amongst the state courts. Pitcher v. Standish, 90 Conn. 601, 98 A. 93, L. R. A. 1917A, 105; Old Town Bank v. McCormick, 96 Md. 341, 53 A. 934, 60 L. R. A. 577, 94 A. S. R. 577; Citizens Nat. Bank v. Gass, 29 Pa. Sup. Ct. 125, and other Pennsylvania cases cited in the notes in L. R. A. to the case of Pitcher v. Standish, 90 Conn. 601, 98 A. 93, L. R. A. 1917A, 105; Lace v. Smith, 34 R. I. 1, 82 A. 268, Ann. Cas. 1913E, 945.

Since those cases were decided an opinion has been handed down in the case of International Shoe Co. v. Pinkus, 278 U. S. 261, 49 S. Ct. 108, 109, 73 L. ed. 318, in which the Supreme Court of the United States has expressed itself in a manner which we believe determines the question adversely to the position of the petitioners herein. In that case Pinkus, a merchant doing business in Arkansas, became insolvent, and when he was sued by the International Shoe Company on its claim, which amounted to less than $500, he endeavored to take advantage of the Arkansas insolvency act by filing a petition and having a receiver appointed to take and distribute his property as directed by that statute. The court [278 U. S. 263] adjudged him insolvent and appointed a receiver with directions to

take his property and liquidate it and direct creditors to make proof of their claims "with the necessary stipulation that they will participate in the proceeds in full satisfaction of their demands." The usual proceedings were then had under the Arkansas insolvency law. The receiver sold the property of the insolvent, and the International Shoe Company brought suit praying that its judgment be paid out of the funds in the hands of the receiver. The Arkansas court denied relief to the shoe company, and the case went in due course to the Supreme Court of the United States. That court observed that inasmuch as the shoe company's claim was for less than $500, it could not invoke the jurisdiction of the federal bankruptcy courts without the co-operation of other creditors.

In commenting upon the Arkansas insolvency law, which like our own provides for the distribution of assets and the release of the debtor, the Supreme Court, speaking through Mr. Justice Butler, used the following language [278 U. S. 264]:

"The state enactment operates within the field occupied by the Bankruptcy Act. The insolvency of Pinkus was covered by its provisions. He could have filed a voluntary petition. * * * The power of Congress to establish uniform laws on the subject of bankruptcies throughout the United States is unrestricted and paramount. Constitution, Art. 1, § 8, cl. 4. The purpose to exclude state action for the discharge of insolvent debtors may be manifested without specific declaration to that end; that which is clearly implied is of equal force as that which is expressed. * * * In respect of bankruptcies the intention of Congress is plain. The national purpose to establish uniformity necessarily excludes state regulation. It is apparent, without comparison in detail of the provisions of the Bankruptcy Act with those of the Arkansas statute, that intolerable inconsistencies and confusion would result if that insolvency law be given effect while the national Act is in force. Congress did not intend to give insolvent debtors seeking discharge, or their creditors seeking to collect claims, choice between the relief provided by the Bankruptcy Act and that specified in state insolvency laws. States may not pass or enforce laws

to interfere with or complement the Bankruptcy Act or to provide additional or auxiliary regulations. * * * It is clear that the provisions of the Arkansas law governing the distribution of property of insolvents for the payment of their debts and providing for their discharge, or that otherwise relate to the subject of bankruptcies, are within the field entered by Congress when it passed the Bankruptcy Act, and therefore such provisions must be held to have been superseded. * * * The enforcement of state insolvency systems, whether held to be in pursuance of statutory provisions or otherwise, would necessarily conflict with the national purpose to have uniform laws on the subject of bankruptcies throughout the United States."

It is the contention of the respondents that this case does not go to the extent of holding that persons not subject to involuntary proceedings under the national act cannot be subjected to the insolvency law, because in this case three creditors might have commenced an involuntary proceeding against Pinkus. Even if that is so, the language clearly indicates the views of the court, which is the final arbiter on the question.

The appellant's property and person might be subjected to the provisions of the national act, and we believe congress intended to occupy the entire field of bankruptcy law and thus carry out the purpose of uniformity indicated in the federal constitution.

We are disposed to follow the reasoning of the supreme court of Maine in the case of Littlefield v. Gay, 96 Me. 422, 424, 52 A. 925, 926, where that court said:

"Under the bankrupt law Blackington could have gone into bankruptcy voluntarily, but could not be forced in by his creditors, under involuntary proceedings. He was asked to go in and refused. It is argued with great ability, that in that condition, the state insolvency law may be invoked. Plausible as the argument is, we do not regard it as sound. At any time after proceedings under the state law, Blackington could have voluntarily invoked the bankrupt law, and thereupon all proceedings under the state law would necessarily cease. The test of jurisdiction under the state law does

not rest upon the volition of the debtor. If his person and property are or may be subject to the bankrupt law, then as to him and his possessions the state insolvency law is in abeyance and powerless. Upon any other view, it would be in the power of the debtor at any time to oust the jurisdiction of the state court, after it had been assumed. This would result in great confusion. It may be avoided by holding as we do, that where the person falls within the purview of the bankrupt act, whether by voluntary or involuntary proceedings, the state insolvent law must be silent." See also Closser v. Strawn (D. C.) 227 F. 139.

We are convinced that while the national bankruptcy act is in force, G. S. 1913, c. 90, is in abeyance and inoperative as to farmers because it attempts to act within the field appropriated by congress under the national bankruptcy act. To hold otherwise would result in endless confusion and would circumvent the purposes of the act of congress which evidently intended to protect the farmer from involuntary bankruptcy proceedings. If we were to hold that c. 90 might be invoked for the purpose of the distribution of assets alone and that only the provision for release of debtors is to be inoperative during the time that the national bankruptcy act is in effect, the insolvency act could be used for the purpose of forcing farmers to take voluntary proceedings under the national bankruptcy act, thus accomplishing indirectly what congress evidently did not intend to permit.

The order appealed from is reversed.